REUBEN SLAUGHTER v. THE STATE.

The fact that the bailiff was present with the jury, during their deliberations on a criminal case, is, in itself, not a ground for a new trial.

Such violation of his duty, however, might be attended with circumstances that would render the jurors liable to the imputation of misconduct, and be ground for a new trial, if it were such as to engender the opinion, that the defendant had not received a fair and impartial trial.

On an indictment for an offence, divided into different degrees, a general verdict of guilty, assessing a penalty applicable only to one of the inferior degrees, and which does not find the defendant *not guilty* of the higher degrees, is insufficient to support a judgment of conviction; and is ground to arrest the judgment.

Such an informality in the verdict, is the proper subject of correction, with the consent of the jury; and if they refuse to make it, they should again retire.

APPEAL from Atascoso.   Tried below before the Hon. E. F. Buckner.

This was an indictment against Reuben Slaughter, charging him with murder, in the usual form.   It alleged that the instrument used by the defendant, in the commission of the offence, was a shot-gun; and that he killed the deceased, William McCulloch, voluntarily, with deliberate design, feloniously, and of his malice aforethought.

On a motion for a new trial, it appeared, that during the deliberation of the jury in their retirement, the bailiff was present among them, and remained with them until their discharge, with the exception of a short absence from the house on one occasion. One of the jurors stated the same fact, and also that he did not know that the bailiff spoke to any of the jurors, nor they to him,

concerning the case, and further, that he did not believe that he did.

The defendant offered to prove, that two nights before the death of McCulloch, he said to the witness, "that he had done enough to the defendant, for him (the defendant) to take his (McCulloch's) life; that he intended to commence shooting the defendant, as soon as he got within shooting distance of him; that he had good weapons, was a good shot, and all he wanted was to see the defendant first. That he then had with him a double barrel gun, and a six-shooter, and that he was on the look-out for the defendant." The testimony was rejected; neither the grounds of objection to it, nor those assigned for its rejection, were shown by the record. The other facts appear from the opinion.

*Hancock & West*, for the appellant.

*Attorney-General*, for the appellee.

ROBERTS, J.—The main grounds relied on, for a reversal of the judgment in this case, are, the defect of the verdict, and the improper conduct of the bailiff, in being with the jury during their deliberations upon the case. Both of these grounds are set out, in the motion made by defendant for a new trial.

The Code enumerates certain grounds, which are permitted to be taken in a motion for new trial, and forbids any other. (Art. 672, Crim. Pro., O. & W. Dig. 643.) Neither one of these, is one of the causes enumerated. In regulating the "trial before the jury," it is provided, that "no officer, who is in attendance upon the jury, shall be permitted to be in the room with them, while they have a case under consideration. The officer shall, however, remain sufficiently near, to answer to any call made upon him by the jury." (Art. 609, O. & W. Dig. 636.) This rule prescribes the duty of the officer who attends upon the jury, and it is the duty of the court to enforce obedience to it. Its infraction may be harmless to the prisoner, or to the State, but

it may be attended with such circumstances, as will render the jurors liable to the imputation of misconduct. In such case, it might become a cause for new trial; for "where, from the misconduct of the jury, the court is of opinion, that the defendant has not received a fair and impartial trial," a new trial should be granted. (O. & W. Dig. 643.) There is nothing shown here, in connexion with this infraction of the rule, which could implicate the jury in any misconduct, calculated to engender the opinion, that the defendant had not received a fair and impartial trial.

The defendant assigned the same causes, in his motion in arrest of judgment. "A motion in arrest of judgment, is a suggestion to the court, on the part of the defendant, that judgment cannot be legally rendered upon the verdict against him." (O. & W. Dig. 643.)

It is contended in this case, that the verdict will not support the judgment rendered on it. The verdict found in the record, is as follows: "We, the jury, find the defendant guilty, and assess the punishment, at confinement in the state penitentiary for the term of twelve months."

This is in literal compliance with Art. 626, requiring that the jury shall "find that the defendant is either 'guilty,' or 'not guilty,' and in addition thereto, they shall assess the punishment, in all cases where the same is not absolutely fixed by law, to some particular penalty." (O. & W. Dig. 637.) But it is in disregard of Art. 630, which provides, that "where a prosecution is for an offence consisting of different degrees, the jury may find the defendant not guilty of the higher degree, (naming it,) but guilty of any degree, inferior to that charged in the indictment." Considering both of these articles together, the verdict is certainly informal, and should have been corrected before it was received. (Art. 627, 628.)

By Articles 627, 628, it is provided, that "if the jury find a verdict which is informal, their attention shall be called to it; and with their consent, the verdict may, under the direction of the court, be reduced to proper form." "If the jury refuse to have

the verdict altered, they shall again retire to their room to deliberate," &c.

When it is said, in Article 626, that "the verdict in every criminal action must be general," "guilty or not guilty," it is meant, that the verdict must be general, in contradistinction to its being special. This is not inconsistent with Article 630, which requires, that the particular grade of offence shall be designated, and the higher grades negatived, in cases where the jury find the defendant guilty of a minor grade included in the indictment. The several provisions of the Code, on the same subject, must be maturely considered in connexion, to arrive at the correct practice under it.

It is very probable, that the parties and the court understood what the jury meant by this verdict, and that they designed to find the defendant guilty of manslaughter only. This is evidenced by the absence of any effort to correct it, and by the recital in the judgment, that the jury had found "defendant guilty of manslaughter." This recital might raise the presumption, that the verdict had been corrected, but for the fact, that its informality was made a special ground, in the motions for new trial and in arrest of judgment, which were passed upon immediately preceding the rendition of the judgment; and their decision is recited in it.

This conclusion that the jury intended to find the defendant guilty of manslaughter, is arrived at, not from the verdict considered abstractly, but from the facts in proof, and the charge of the court. If this be true, the verdict was such as that judgment could not be rendered upon it. This presents the two questions to be examined: 1st. Is the verdict sufficient, by itself, to warrant the conclusion, that the jury intended to find the defendant guilty of manslaughter? And 2d. If not, can the defect be aided, and the matter made certain, by reference to the facts in proof, and the charge of the court? This being an indictment, in common form, for murder, embraced within it charges of every degree of culpable homicide, to wit, murder, manslaughter, and negligent homicide, of the first and second

degrees, (O. & W. Dig. 530, 531, 532, 534,) the defendant might have been found guilty of any one of these degrees, under this indictment, upon the plea of "not guilty." Such plea would put in issue each one, as well as all, these degrees of culpable homicide. A general verdict of "not guilty," negatives all of them. A general verdict of "guilty," would leave it uncertain as to the degree found by the jury; hence, our Code, in accordance with the practice at common law, requires the jury, if they find the defendant guilty of any of the inferior degrees, to indicate it in their verdict. (Art. 630.) A general verdict of guilty, on such an indictment, under such a rule, would be a finding of the defendant guilty of murder, the highest degree charged. The term *verdict*, in its original signification, and according to its import, as used in judicial trials, denotes a true declaration by the jury. A true declaration of what? Not of the punishment, (for originally that was not the province of the jury,) but of the issue made by the parties.

Our Code declares that "the *verdict*, in every criminal action, must be general; where there are special pleas upon which the jury are to find, they must say, in their verdict, that the matters alleged in such pleas, are either true or untrue; where the plea is 'not guilty,' they must find that the defendant is either 'guilty' or 'not guilty;' and, *in addition thereto*, they shall assess the punishment in all cases where the same is not absolutely fixed by law to some particular penalty." (Art. 626.) It is manifest, from this provision, that the main matter involved in the duties of jurors under our system, is still to find and declare the truth of the issue between the parties; and having done this, their finding becomes the predicate for another thing incidental, "*and in addition thereto*," to wit, the assessment of the punishment, in certain cases. The jury is not given the power to assess the punishment at discretion; but only according to the predicate they lay for it, by their finding of the issue. The court must be informed definitely of their finding on the issue, so as to see that their assessment was warranted. To infer that they found the defendant guilty of manslaughter in this case, because they as-

sessed the punishment which is alone applicable to manslaughter, is to take it for granted that they have properly exercised their power of assessing punishment, without their having declared their finding on the issue, which could be the predicate for such assessment, and, indeed, when their finding of a general verdict of guilty, is inconsistent with such assessment. This would be to allow and sanction the exercise of an incidental dependent power; not only without the necessary predicate being laid for it, but directly contrary to the predicate that was laid in their finding. It would abrogate the 630th Article of the Code, requiring the jury to indicate the degree, in their verdict. A general verdict of "guilty," would apply as well to negligent homicide, as to manslaughter. If that is what they intended, the punishment assessed is excessive. And, on the other hand, if they meant what they have literally expressed, that he was guilty of murder, then they had no right to assess the punishment so low as they did. A verdict cannot answer the purpose for which it is required, without a compliance with the plain requisitions of the Code, in designating the degree. Without it, there is no security that the jury have properly exercised their discretion in assessing the punishment.

Can we look to the facts in proof, and the charge of the court, in order to render certain, what the jury meant by this finding and assessment, which is in itself incongruous? A verdict is a response given by the jury, to the court, indicating their opinion of the correspondence of the facts in proof with those alleged, which constitute the issue between the parties. Such response has reference to the facts alleged. It may either entirely or qualifiedly affirm or negative them. The indictment, the plea, and the verdict thereon, constitute the record of the facts, judicially ascertained, upon which the judgment must be pronounced as a legal consequence. They must, taken together, be complete, to sustain a judgment, and must indicate the particular judgment which, under the law, can be pronounced. The facts in proof, and the charge of the court, were formerly not preserved, except as the mere notes of the judges, for use upon an application for

a new trial, and constituted no part of the record. With us now they constitute no part of the record, except only for purposes of revision by the Supreme Court, upon appeal. It is only after notice of appeal, that the statement of facts is required to be made and placed in the transcript. (Art. 729, 673.) The object of the statement of facts, and of the charge of the court, is to show, the verdict rendered was contrary to the facts or the law, and that it should not have been rendered; not to correct any incongruity in the terms of the verdict, and reform it. To aid the verdict, by a resort to such sources of information, would be a departure from all the principles regulating the subject.

The verdict and assessment of punishment, considered in connexion with the indictment and plea, present a plain inconsistency, for which there is no certain solution. It is certain that the jury were mistaken in their duty. If they intended to find him guilty of murder, they were mistaken in the punishment which they had the power to assess; if they intended to find him guilty of manslaughter, as their assessment would indicate, they were mistaken in the manner of finding the issue, so as legally to convey that idea in the verdict. Therefore, their assessment of punishment has no appropriate support, and cannot be made the judgment of the court.

The bill of exceptions shows, that a part of the evidence of a witness, detailing threats, made by the deceased against the prisoner, were excluded by the court; for what reason, does not appear. This ruling was not embraced in the motion for a new trial, and has not been referred to in argument. And, therefore, although we do not see any reason why this testimony should have been excluded, it may not be material to consider the question, further than to refer to the 612th Article of the Penal Code. Judgment reversed and cause remanded.

Reversed and remanded.