## JAMES AND REUBEN ROSEBOROUGH v. THE STATE.

1. NEW TRIAL should not be granted for the incompetency of one of the jurors by whom the case was tried, when it is not shown that the incompetency was not known when the juror was accepted or that it could have been known by proper inquiry.

2. CIRCUMSTANTIAL EVIDENCE.—It seems that in criminal cases the mere union of a limited number of independent circumstances, each of which is of an imperfect and inconclusive nature, cannot afford a just ground of conviction.

3. SAME.—See facts held insufficient to sustain a verdict of guilty of assault with intent to murder.

APPEAL from Harrison. Tried below before the Hon. J. L. Camp.

James and Reuben Roseborough were convicted of an assault with intent to murder W. L. Nix, and their punishment fixed at five years in the penitentiary. On 24 June, 1875, a motion for new trial was filed and overruled.

On the next day a second motion for new trial was filed, showing, under oath, that "H. A. Rozelle, the foreman of the jury who tried the cause, is not now nor was he at the time the cause was tried a qualified juror;" * * "that said Rozelle, on this the 25th June, 1875, declared under oath

that he is not a citizen of Harrison county, in the State of Texas;" * * " that affiant verily believes the statements to be true;" * * " that this application was made as soon as the attention of affiant was called to the facts."

This motion was overruled and appeal taken.

The testimony was as follows :

Bill Howard, for the State, testified that on Christmas Eve night, of 1874, he was at the grocery of Charles Blalock, at Woodlawn, on the Texas and Pacific railway; that between eight and nine o'clock that night he left Woodlawn, and in company with Thos. H. Blalock, Horace Lane, and the defendants James Roseborough and Reuben Roseborough, they proceeded up the railroad about one mile to the grocery of James M. Harcrow; that they had all been drinking at Blalock's grocery, and on leaving they took with them a bottle of whisky, which they drank on the road. After they had been at Harcrow's a short time W. L. Nix came in, bought a bottle of whisky, and left. A short time after Nix left, the defendants left the grocery. Reuben Roseborough remained absent about three-quarters of an hour and returned. About the time Reuben returned Blalock told witness and Lane to go out and see what had become of defendants. Witness and Lane went down to the railroad, which was about twenty-five yards from the grocery, and they called defendants, and finally James answered back of the grocery. They went back, and when witness got to James Roseborough he said to witness: " You all are trying to get me drunk to-night; in the house they are trying to get me drunk, but they can't get away with me." Witness and James then went into the grocery, where they found Reuben Roseborough, who had already returned. Very soon after James went out of the grocery into the road and called witness out to him; that when witness got out to James he said to witness, " I got away with that old fellow." Witness asked what he meant, when James said, " That old fellow who had the sack in the

store;" "I got his money and purse;" at the same time showing a purse and handing witness a dollar in United States currency. "If you don't believe I got away with him here's his damned old hat," at the same time pulling a hat out of his bosom. Witness and James then went back to the grocery; when witness got into the grocery he laid the dollar down by the side of the counter; that witness bought a bottle of whisky and treated the crowd. About that time Mrs. Harcrow came down from the house and gave the alarm that some one had been killed up near the house. Harcrow shut witness and James Roseborough up in the grocery, and sent Blalock, Lane, and Reuben Roseborough up to his house; that after they returned Harcrow shut them all up in the grocery together, where they remained all night; that after they had been shut up awhile Harcrow took witness out of the grocery, when witness told Harcrow what James Roseborough had said and shown to witness.

James Harcrow, for the State, testified that on the night of 24th of December, 1874, he was at his grocery in Harrison county; that early in the night Blalock, Lane, Howard, and James and Reuben Roseborough came in; that after they had been there a short time W. L. Nix came in, bought a bottle of whisky, and when he went to pay for it he spread his money out on the counter; that while he had his money out James Roseborough stepped up and looked at it without saying anything. Nix treated the crowd. After he had been gone about half an hour witness missed the Roseboroughs; that Blalock sent Lane and Howard to look for them, and after a few minutes they returned and the defendants with them; that in ten or fifteen minutes some one came down from ·the house and said some one had been murdered up there in the road; that witness then shut Howard and James Roseborough up in the grocery, and sent Lane, Blalock, and Reuben Roseborough up to the house to see what was the matter; that witness

did not go with them up to the house, and when they returned he shut them up in the grocery with Howard and James Roseborough, and searched all the parties; that after they had remained shut up some time witness took Howard out to talk to him; that Howard told witness what James Roseborough had said to him; that witness then went back into the grocery and searched it very carefully, and under the counters he found nine dollars in currency rolled up together; that in another part of the house he found a buckskin purse, and under the bed a hat which he recognized as the hat of Nix; that witness had seen Nix wear the hat often; that witness kept Howard and defendants until morning, when he sent for an officer and turned them over to him. Witness did not go up to his house until next morning, when he found Nix at the house of witness. Nix had a bad wound on the side of his face.

Henry Morris, for the State, testified that on the 25th of December, 1874, Reuben Roseborough came to the house of witness and said "he did not do it, but furnished Nicodemus the tricks to do it with;" that he had money—was going to give an "egg-nog," and then he was going to Marshall and give another "egg-nog," and then he intended to take the cars and leave. Witness did not know who defendant referred to as "Nicodemus" or what transaction he alluded to.

John Harcrow, for State, said, on 25th December, 1874, I was sent for to go to James Harcrow's. I went, and found a man who was introduced to me as Mr. Nix. He had a severe wound on the face. I went out on the road to the place where Nix had been found. There I saw the tracks of one man behind a tree, where the man had been standing who gave the blow to Nix. Going from this point down to the grocery on the side of the road, a little way down from the road, I saw the same track I had first seen behind the tree, and following this track a little distance I came upon a hickory stick which had been freshly

cut and roughly trimmed up, on one of the knots of which I saw blood stains.

Horace Lane, for the State, testified that witness and defendant, Reuben Roseborough, went from the grocery to Harcrow's house after it was known that Nix had been hurt. When witness and defendant got to the gate Reuben Roseborough said, "If he ain't dead, let me get to him, and I'll finish him yet." In going from the gate back to the grocery, Reuben, myself, and several others went by the place where we were informed the said Nix was assaulted. Sometimes one would be ahead and then another, but when we came near the place Reuben went ahead and reached the place first, picking up a haversack that was lying by the roadside belonging to Nix.

No counsel for appellants.

*A. J. Peeler, Assistant Attorney General,* for the State.

MOORE, ASSOCIATE JUSTICE.—The court did not err in refusing to grant a new trial on the ground of the alleged incompetency of one of the jurors by whom the case was tried. This is not one of the causes for which in cases of felony the code says new trials shall be granted. (Code Cr. Pro., art. 672.) But if the juror was disqualified when he was passed upon and accepted by the parties, and this fact was unknown to appellants and their counsel, though it does not so appear in the record, it is not shown that this was not from want of proper inquiry. (Code Cr. Pro., art. 577.) Nor does it appear that any material error was committed by the court in the organization of the jury calculated to injure the rights of appellants.

An inspection of the record does not leave the slightest ground for holding that a new trial should have been granted the appellant, James Roseborough. The verdict against him is fully warranted by his own explicit and

direct admissions, which are corroborated and supported also by circumstantial evidence of the most convincing and conclusive character.

But with reference to the other defendant, Reuben Roseborough, we cannot say that this is the case. While the evidence is certainly calculated to beget in the mind the strongest suspicion of a guilty complicity of some sort between him and his codefendant in connection with the transaction, we cannot say, under the well-established rules of law applicable in cases depending on circumstantial evidence alone, that the facts as presented in the record warrant his conviction, either as a principal or accessory before the fact, of the offense for which he has been indicted. By the well-recognized formulary for determining the sufficiency of circumstantial evidence to warrant conviction in criminal cases, the circumstances should with reasonable certainty exclude any other hypothesis but that of guilt. The circumstances relied upon must also be of a conclusive nature and tendency. For, as is said by Mr. Starkie in his philosophic treatise on the law of evidence, "whenever mere inconclusive probabilities concur, the result, however the degree of probability may be increased by the union, will still be of a definite and inconclusive nature. And hence it seems that in criminal cases the mere union of a limited number of independent circumstances, each of which is of an imperfect and inconclusive nature, cannot afford a just ground of conviction." (1 Stark. Ev., 570; 1 Greenl. Ev., § 13a.)

The testimony not being sufficient beyond all reasonable doubt to warrant the jury in finding the defendant, Reuben Roseborough, guilty of the offense charged in the indictment, the court should have sustained the motion for a new trial as to him, and for its refusal to do so the judgment against said Reuben Roseborough is reversed and the case remanded to the District Court for further proceeding. But there being no error in the judgment against

appellant, James Roseborough, it is, as to him, in all things affirmed.

AFFIRMED.