## MANUEL LÓPEZ v. THE STATE.

1. MURDER—VERDICT.—In a trial for murder the verdict was: "We, the jury, find the defendant not guilty as charged, but we do find him guilty of murder in the second degree, and assess his penalty," etc. It is contended that the first clause of the verdict acquits the accused of every degree of culpable homicide, and that the second clause, which purports to find him guilty of murder in the second degree, is nugatory after such acquittal. But *held* that the verdict acquits the accused of nothing but murder in the first degree, and finds him guilty in the second degree. It would, however, have been in simpler and better form if it had said "not guilty of murder in the first degree," instead of "not guilty as charged."

2. SAME.—The rulings in *Slaughter* v. *The State*, 24 Texas, 410, and in *Buster* v. *The State*, 42 Texas, 315, respecting verdicts, explained.

3. EVIDENCE.—See the opinion for evidence held sufficient to sustain a conviction for murder in the second degree.

APPEAL from the District Court of Bexar. Tried below before the Hon. GEORGE H. NOONAN.

In the opinion will be found the material facts.

*Leslie Thompson* and *Coopwood & Stewart*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J: Several of the questions presented and insisted upon by counsel in this case have been already passed upon and decided at the present term of this court, in the case of *Harris* v. *The State*, appeal from Bexar county. So far as they are concerned, we refer to the opinion of Ector, P. J., in this latter case.

It is contended with great earnestness, by the learned counsel for defendant, that the verdict of the jury was tantamount to a complete acquittal, and that the accused should therefore be discharged and set at liberty.

The indictment is in the ordinary form, and charges

the defendant with the murder of Francisca Marquez (a woman), with express malice aforethought.  Under a special instruction contained in the charge of the court as to the form, character, and phraseology of their verdict in case they found defendant guilty of murder in the second degree, the jury, having so found, returned, as instructed, the following verdict, viz.: "We, the jury, find the defendant not guilty as charged, but we do find him guilty of murder in the second degree, and assess the penalty of ten years' imprisonment in the state penitentiary."  It is urged that, the indictment being for murder of the first degree, it embraced and charged all the lesser degrees of culpable homicide; that the defendant could not be found guilty of murder in the second degree unless the indictment embraced and charged that offense; and that, if the indictment did so charge that offense, then the verdict of the jury, finding him "not guilty as charged," acquitted him of that offense also.

By Article 630 of the Code of Criminal Procedure (Pasc. Dig., Art. 3095) it is provided that, where a prosecution is for an offense consisting of different degrees, the jury *may* find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment; and by Article 631 (Pasc. Dig., Art. 3096) it is provided "that certain offenses include different degrees: 1, murder, which includes all the lesser degrees of culpable homicide."  *  *  *

Again, Article 626 (Pasc. Dig., Art. 3091) provides "that the verdict in every criminal action must be general."

As it will be remembered, these articles were in the Code of Criminal Procedure when it was adopted, in 1856.  But by act of February 12, 1858, it was further provided: "If the jury shall find any person guilty of murder, they shall also find by their verdict whether it is of the first or second degree; and, if any person shall plead guilty to an

indictment for murder, a jury shall be summoned to find of what degree of murder he is guilty; and in either case, if they shall find the offense to be murder of the second degree, they shall also find the punishment." Pasc. Dig., Art. 2268.

The case of *Slaughter* v. *The State*, 24 Texas, 410, cited by counsel, as was said in *Buster* v. *The State*, was decided without "notice being taken of the act of 1858, cited above, either because it was enacted subsequently to the trial of the case in the district court, or, as is more probable, because it was unnecessary to do so, as it was insisted that in effect the jury found the defendant guilty of manslaughter." *Buster* v. *The State*; 42 Texas, 315. The verdict in the Slaughter case did not name the crime or offense of which the jury found the defendant guilty; and the same objection was held good in *Buster* v. *The State*, the offense not being named of which defendant was found guilty.

These cases are not similar to the one we are considering, because there can be no mistake that the intention of the jury in this case was to find defendant guilty of murder of the second degree, since they so expressly state in the verdict. The question is, does the language " we, the jury, find the defendant not guilty as charged," which is preliminary to their finding him guilty of murder of the second degree, operate an acquittal? If not, it is not contended that the verdict is not otherwise good for murder in the second degree.

A case almost directly in point is *Frul* v. *The State*, decided by the supreme court of Arkansas. The verdict in that case was: " We, the jury, find the defendant, Sally Frul, not guilty in manner and form as charged in the indictment, but we find her guilty of murder in the second degree, and assess the punishment at seven years' imprisonment in the penitentiary-house of the state of Arkansas."

·The court says, Mr. Chief Justice English delivering the opin-
.ion : " It is insisted for the plaintiff in error that by the form
of the verdict she was acquitted altogether, and that she
·should have been discharged. There certainly would be
.much force in the argument but for the latter clause of the
verdict, which, unfortunately for the plaintiff in error,
·expressly finds her guilty of murder in the second degree.
'The statute classes murder into first and second degrees, and
provides that " the jury shall, in all cases of murder, on con-
viction of the accused, find by their verdict whether he be
·guilty of murder in the first or second degree." Dig., p.
·338. (This Arkansas statute, it will be observed, is in words
·the same as the 1st clause of our own statute, Pasc. Dig.,
Art. 2268, above quoted.) The court proceeds to say :
" The practice· under the statute is to charge the accused
·with murder generally, without alleging the degree of the
crime, leaving the jury to find that by their verdict. We
·think that there is no room to doubt but that the jury
·intended by their verdict to find the plaintiff in error not
guilty of murder in the first degrée, but to find her guilty of
murder in the second degree. Such' is the legal effect of
the verdict." *Frul* v. *The State*, 21 Ark. 212. See, also,
*The State* v. *Bowen*, 16 Kan. 475.

So, in the case we are considering, we think the verdict
does not acquit the defendant of anything but murder in
the first degree, and that it does find him guilty of murder
in the second degree. The form of the verdict, however,
is not commended as a model in murder cases. It would
have been much simpler and better for the jury to have
found the defendant not guilty of murder of the first degree,
and then.found him guilty of murder of the second degree.
The form as used by the district judge in this case has been
held to be sufficient, under the statute, for cases of assaults
with intent to commit other offenses, wherein it is provided
that " the jury in every case arising under this chapter may

acquit the defendant of the offense charged in the indict-
ment, and may, according to the facts, find the defendant
guilty," etc.   Pasc. Dig., Art. 2160.   Under this statute,
where the verdict was "not guilty as charged, but guilty
of an aggravated assault," the supreme court held it good.
*Posey* v. *The State*, 32 Texas, 476.

The only other remaining question is as to the sufficiency
of the evidence.   The facts proven on the trial may be con-
cisely stated as follows :  On the night of the killing, the
deceased, with fifty or seventy-five others, were at a fandango
which was being carried on in a tent kept by one Killman,
near Alazan ditch, in the city of San Antonio.   The witness
Galan said he knew defendant, Manuel Lopez, and saw him
between ten and eleven o'clock that night, on horseback,
about 500 or 600 yards from, and going in the direction of,
Killman's tent.   Alcaris Prunera, another witness, stated
that he heard four shots fired, and saw the flash of the pis-
tol as the man fired the last shot, and the pistol from which
he saw the flash was held in the hands of a man on horse-
back.   That the person who did the only firing done was
the only one on horseback that he saw there that night.
That the firing was done as the man on horseback was going
round the tent from west to east.   After the firing the man
rode off into the *chaparral*.   The witness Killman said there
were five shots fired ; the person who did the shooting was
riding, for the shots were fired in quick succession, from
different points, into the tent, and he heard the horse stum-
ble against the rope of the tent as the second shot was fired.
He ran out of the tent and saw some one wheel his horse
round and ride off into the *chaparral*.   He recognized the
man on the horse as the defendant, Manuel Lopez.   He was
only about fifteen feet from Lopez when he rode off, and
knew him, having seen him very often during the previous
eight months ; and he could not be mistaken as to the man.
There was no other horseman there that night.

The witness thought the first shot fired was the one which killed the woman, as that shot did not go through the tent, whilst the others did.    After the firing, this witness went to the fandango tent where Lopez stayed and inquired for him, and was told he was not there and had not been for a week. They were closing up the house, and all seemed very much excited.

The witness Buckley arrested the defendant that night. Defendant was on horseback when he arrested him, at the corner of the main plaza and Market street.   The witness, after arresting him, took from him a six-shooter which had but one load in it; it looked like it had recently been shot off.   All the witnesses testified that the man on horseback had on dark clothes.   There was some discrepancy as to the color of the horse, but the witness Galan, who saw Lopez going in the direction of Killman's tent, described the horse he was riding as a sort of a sorrel, and the witness Buckley, who arrested him, said the horse he was riding when arrested was a sorrel.   Defendant introduced not a single witness.

With this testimony before them, unimpeached and uncontradicted, we cannot well see how the jury could have found any other than a verdict of guilty.   The only surprise is that, having found defendant guilty, they should have assessed so mild a punishment.   For, so far as the record discloses, a more cruel, wanton, outrageous, reckless, heinous, and dastardly murder has rarely ever been perpetrated.

The judgment of the lower court is in all things affirmed. *Affirmed.*