## DAVID P. BAKER *v.* THE STATE.

1. NEW TRIAL. — That the person who acted as bailiff of the petit jury was not a sworn officer, and was a relation of the deceased for whose murder the defendant was on trial, is not ground for a new trial when no exception was taken to him at the proper time, and when it does not appear that any right of the defendant was prejudiced.

2. JURY LAW. — The act of 1876 provides that tales jurors shall not be summoned from persons found in the court-house or yard, if procurable elsewhere. This provision does not apply to persons found in houses fronting on the court-house square.

3. NEW TRIAL — DISQUALIFICATION OF JUROR. — That a juror was related to the deceased for whose murder the defendant is on trial is not cause for new trial, when proper inquiry was not made on the *voire dire* of the juror, nor any diligence used to discover the relationship before he was impaneled.

4. POLITICAL CONTROVERSY should never be allowed to enter into a judicial investigation; but if introduced by a party, he cannot complain of a reply of the same character.

5. MURDER — CHARGE OF THE COURT. — A defendant having, on a former trial for murder, been convicted in the second degree, and thus acquitted of the first degree, it was not incumbent on the court, at a subsequent trial, to give in charge to the jury a definition of express malice, or otherwise instruct them on the law of murder of the first degree.

6. SAME. — A defendant on trial for murder of the second degree is not entitled to an acquittal because the evidence against him would sustain a conviction for the first degree.

Appeal from the District Court of Caldwell. Tried below before the Hon. L. W. Moore.

A former appeal in this case is reported in volume 3 of the Texas Court of Appeals Reports, page 525. Being reversed and remanded on that appeal, it came to a second trial in March, 1878, when the appellant was again found guilty of murder in the second degree. His punishment was assessed at five years in the penitentiary, instead of eight years as on his former conviction.

The indictment was found at the April term, 1874, of the District Court of Caldwell County, and charged that David P. Baker, the appellant, did, with express malice aforethought, kill and murder F. Augustus Ellison on January 16, 1869.

Baker, the appellant, was sheriff of Caldwell County in January, 1869, and in the morning of the day on which the homicide occurred the mayor · of the town of Lockhart placed in his hands a warrant for the arrest of Ellison, the deceased, and three of his companions, on a charge of disturbing the peace. A great deal of carousing and turbulent conduct was going on, to the alarm of several of the merchants. The defendant, it appears, ineffectually summoned several of the citizens to aid him in executing the warrant of arrest. Late in the afternoon he went into a store, armed with a double-barreled gun, and summoned one of the proprietors, who excused himself. In a few minutes the deceased, accompanied by others charged with the disturbance, approached the store. According to some of the witnesses, the deceased was walking quietly along, but others testified that he was menacing the defendant by language and gestures. As he approached, the accused shot him from the door-way of the store.

The witnesses who testified at the trial were numerous, and there are many circumstantial, and several important,

discrepancies in the accounts of the affair given by them. The rulings of this court, however, do not necessitate a detail of the testimony, and the matters which they involve are disclosed in the opinion.

*J. H. Burts*, for the appellant, filed an able brief and argument.

*George McCormick*, Assistant Attorney-General, and *Nix & Storey*, for the State.

WINKLER, J.   Three special objections to the verdict of conviction are taken by the appellant, and are set out in the motion for a new trial, and assigned as error, to wit:

" 1. That the person who was in charge of, and acted in the capacity of bailiff in attendance upon, the jury, during the progress of the trial below, and whilst the jury were deliberating upon their verdict, was not a sworn officer of the county, nor sworn specially as bailiff for the occasion, and was related to the person for whose murder the accused was then on trial.

" 2. That two of the jurors who sat upon the trial were summoned in violation of the proviso to section 23 of the jury law of 1876, which is as follows : " Provided that, in supplying the deficiency, it shall not be lawful for the sheriff, or other officer, to summon as a juror any person found within the court-house or yard, if they can be had elsewhere ; ' which relates to the summoning of talesmen to complete the panel on the exhaustion of a special *venire* without obtaining a jury.

" 3. That one of the jurors who sat upon the trial was related to the deceased, and was, on that account, an incompetent juror."

The following provisions of the Code relate to the duties and responsibilities of the officer and those who may be

called on to act in the capacity of bailiff in charge of a jury on the trial of a criminal case:

"After a jury has been sworn and impaneled to try any case of felony, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of the district attorney and the defendant, and in charge of an officer. It shall be the duty of the sheriff to provide a suitable room for the deliberation of the jury in all criminal cases, and to supply them with such necessary food and lodging as he can obtain; but no spirituous, vinous, or malt liquor of any kind shall be furnished them. The sheriff shall take care that no person converse with a juryman after he has been impaneled to try a criminal action, except in the presence, and by permission, of the court. In order to supply the reasonable wants of the jury, and for the purpose of keeping them together and preventing intercourse with any other person, the sheriff shall see that one or more bailiffs are constantly in attendance upon them. No officer who is in attendance upon the jury shall be permitted to be in the room with them while they have a case under consideration. The officer, however, shall always remain sufficiently near to answer any call made upon him by the jury. Code Cr. Proc., arts. 605–609 (Pasc. Dig., arts. 3070–3074).

It was held in *Slaughter* v. *The State*, 24 Texas, 410, that these provisions of the Code prescribe the duties of officers who attend upon juries, and it is the duty of the court to enforce them; and in that case it was said of the rule prescribed: "Its infraction may be harmless to the prisoner or to the State, but it may be attended with such circumstances as will render the jurors liable to the imputation of misconduct. In such case it might become a cause for a new trial; for when, from the misconduct of the jury, the

court shall be of opinion that the defendant has not received
a fair and impartial trial, a new trial should be granted."
On the authority of this case of *Slaughter* v. *The State* we
are of opinion that the articles above set out are in the main
directory, and that any infraction of them which did not go
to the extent of involving the jury in such misconduct as
would authorize the court in granting a new trial on that
account would not vitiate the verdict.

It will be seen, by reference to the provisions of the Code
above set out, that, in so far as protecting jurors from being
subjected to improper influence from contact with other per-
sons is concerned, the duty devolves, in the first instance,
upon the sheriff, whose duty under the law it is to *take care*
that they are not permitted to hold converse with other per-
sons, except in the presence, and by the permission, of the
court, and to provide one or more bailiffs to attend to the
wants of the jury, and to keep them together and prevented
from having intercourse with other persons ; and it is as
fair to presume that the sheriff and his deputies, under the
supervision of the court, performed their duty properly as
that injury resulted to the rights of the accused simply from
the fact of relationship, aside from any showing or charge
of any improper act having been committed by the officials.
The statute does not prescribe any special qualifications, or
inhibit, as in case of a juror, those who may be related to
the parties.   And, besides, this is not one of the causes for
which the statute authorizes the granting of a new trial, and
which declares a new trial shall not be granted for any other
reason than those set out in the statute.   Code Cr. Proc.,
art. 672 (Pasc. Dig., art. 3137) ; *Slaughter* v. *The State*,
24 Texas, 410.

The objection to the bailiff having arisen for the first
time on the consideration of the motion for a new trial, we
are of opinion the court did not err in hearing evidence on
the subject, and holding, on the hearing from the evidence,

that the person who acted as bailiff had authority to act. The case would have been otherwise if the attention of the court had been called to it at the proper time. It being shown that he had acted in the capacity of an officer, the legal presumption is that he had authority so to act, on a collateral question. Whart. Cr. Law, sec. 713; 1 Greenl. on Ev., sec. 83; Ex parte *Call*, 2 Texas Ct. App. 497.

As to the second objection, it being shown that the two jurors were summoned, one at a house on the corner of the public square, in the center of which the court-house stood, and the other at a house on one side of the square opposite the court-house, we are of opinion that the law which prohibited the officer from summoning on the jury any person found in the court-house or yard was not violated; the places where the jurors were shown to have been summoned cannot, with propriety, be said to have been in the courthouse or yard.

With regard to the third objection, whilst it is always desirable that no suspicion should attach to a verdict in any case, and especially in one involving life or liberty, still, to set aside a verdict after conviction, the cause for setting it aside must be one sanctioned by law. This objection is that one of the jurors who sat upon the trial was related to the deceased. The relationship, as set out in the appellant's brief, is that the juryman was "the husband of the daughter-in-law, and step-father of the grandchildren of an aunt by affinity to the deceased." To have rendered the juror liable to challenge because of relationship to the deceased, he must have been related within the third degree by consanguinity or affinity. Jury Law 1876, p. 83, sec. 26; (Pamphlet Acts 1876).

The accused stated, in his affidavit accompanying his motion for a new trial, that, at the time the juror was impaneled, "he had exhausted all his challenges, and that the

said juror did not make known his said relationship, and defendant did not know his said relationship, and did not and would not have waived the same had he known of it." But, on the other hand, it is not shown that the juror was interrogated as to said relationship, which it was the defendant's right to do, under the law, at the time he was placed upon the jury ; nor is it shown that he used proper diligence to have discovered it, or that he could not have made the discovery by the use of proper diligence. A new trial will not be granted on account of the disqualification of a juror, though unknown, at the time he was taken upon the jury, to the accused and his counsel, unless it be made to appear that the disqualification could not have been discovered by making proper inquiry. *Roseborough* v. *The State*, 43 Texas, 570 ; *O'Mealy* v. *The State*, 1 Texas Ct. App. 180.

These three special exceptions embrace the fourth, fifth, sixth, and seventh grounds set out in the motion for a new trial. The eighth ground relates to what is complained of as a political argument made use of by one of the counsel representing the State, in the concluding argument to the jury, and to which the defendant took a bill of exceptions. The presiding judge, however, in signing the bill of exceptions, states in this connection that the remarks of the counsel were in reply to something said by the defendant's counsel in allusion to the fact that several years had elapsed from the date of the homicide before an indictment had been preferred. It is to be regretted that a political controversy should ever be permitted to enter the threshold of a judicial investigation — any attempt at which should meet with prompt rebuke from the court. Yet, when the door has once been opened by one party, we would not feel warranted in reversing a judgment on the ground that the other party had discussed the same subject in reply.

The remaining grounds set out in the motion for a new

trial call in question the sufficiency of the evidence to support the verdict, and the correctness of the instructions given to the jury by the court, and their applicability to the case as developed by the evidence. The defense, so far as we are able to determine from the argument of counsel, the evidence adduced, and the charge of the court, seems to have rested mainly on two grounds: first, that the killing was in self-defense; and, second, that the killing resulted from resistance to arrest by the deceased, the accused being the sheriff of the county, and having at the time a warrant for the arrest of the deceased, issued by the mayor of the town, and charging the deceased with disturbing the peace.

There is no controversy as to the fact of the homicide, nor as to the fact that at the time it occurred the accused was sheriff. But if there was on the trial any sufficient evidence of such a state of matters at the time of the killing as to render the act justifiable — as, in the necessary defense of the person of the accused from the loss of his life, or the infliction of such serious bodily harm as was likely to result in depriving him of his life, on the one hand, or that such resistance was made to arrest as would, in law, justify the accused in taking the life of the deceased, on the other — such evidence is not shown by the statement of facts as the same is set out in the transcript; and in so far as the evidence is concerned, it was not sufficient to support either ground of the defense, or to reduce the killing below the grade of murder in the second degree; and on this account we are of opinion the court below did not err in refusing a new trial.

There remains to be considered whether the charge of the court was the law of the case as made by the evidence. The grounds of objection to the charge are stated in the motion for a new trial, and in the assignment of errors, substantially as follows:

" There was error in the charge of the court to the jury in this :

" 1. That the court did not charge the law applicable to the case.

" 2. That the court did not charge all the law applicable to the case.

" 3. The court erred in said charge in not giving to the jury a definition of express malice.

" 4. The court erred in said charge in saying to the jury that he would give them no definition of express malice."

The only special objections to the charge are set out in the third and fourth clauses, as above set out; the other objections do not point out any specific defect.

It was the duty of the court, as required by article 594 of the Code of Criminal Procedure, to charge the jury, setting forth distinctly the law applicable to the case, which has uniformly been held to signify that the charge should distinctly set forth the law applicable to the case as made by the pleadings and the evidence, which has been held to impose upon the judge the duty of giving in charge to the jury the law applicable to every legitimate deduction which the jury may reasonably draw from the evidence adduced. Pasc. Dig., art. 3059 ; *Rogers* v. *The State*, 1 Texas Ct. App. 187 ; *Merritt* v. *The State*, 2 Texas Ct. App. 177 ; *Hudson* v. *The State*, 40 Texas, 15 ; *Holden* v. *The State*, 1 Texas Ct. App. 225.

It must be borne in mind, in testing the applicability of the charge to the case as then before the court and jury, that the accused had been previously tried for the same offense, and been convicted of murder in the second degree, which was equivalent to an acquittal of murder in the first degree ; and, hence, the highest grade of offense of which he could be convicted on the second trial was that of murder in the second degree. The fact of the first trial, and its results, were judicially known to the court below,

and also to this court by the records of each court; and, hence, the charge must be construed with reference to the case as it then stood before the court. *Jones* v. *The State*, 13 Texas, 168; *Hampton* v. *The State*, 2 Texas Ct. App. 652.

The precise question raised by the counsel for appellant is, Did the court err in not charging on murder of the first degree, and in failing to define express malice? And it is intimated that if, on the second trial, the proof had shown murder in the first degree, the accused could not have been convicted of a lower degree, and was entitled to be discharged, or at least to a new trial. We are of opinion that this theory is irreconcilable with the whole body of the law as laid down by the Penal Code and adjudications under it.

When a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment. Code Cr. Proc., art. 630 (Pasc. Dig., art. 3095). Murder includes all the lesser degrees of homicide. Code Cr. Proc., art. 631, par. 1 (Pasc. Dig., art. 3096).

We know of no authority which would suggest the idea that one charged of a higher grade of an offense which includes different degrees has been permitted to set aside a conviction simply on the ground that he has been convicted of a lesser degree of the offense charged in the indictment; or, when convicted of murder in the second degree, he has been heard to successfully complain that the testimony would have supported the higher offense of murder in the first degree. An inappropriate charge should not be given in any case, for the reason that such a charge would be likely to mislead and confuse the jury in their deliberations. *Priesmuth* v. *The State*, 1 Texas Ct. App. 480.

We fail to discover any error in the charge of the court of which the appellant can justly complain. On the con-

trary, it was an accurate enunciation of the law applicable to the case as developed by the evidence.

The presiding judge, in his charge, told the jury as follows: "There will be given you no definition of express malice, as — the defendant having heretofore been acquitted of murder in the first degree — you will make no inquiry into this degree of murder."

The jury were properly instructed as to what would constitute murder in the second degree, in connection with which implied malice was correctly defined; and as to what constituted the crime of manslaughter, and what state of facts would reduce homicide from murder to manslaughter; and as to what state of facts would justify a homicide in self-defense; and upon previous threats; and as to what state of affairs an officer of the law would be justified in taking life in attempting an arrest. In fact, the jury seems to have been properly instructed as to the law arising upon every legitimate deduction the jury could reasonably have drawn from the evidence.

The verdict and judgment are not without sufficient evidence to support them; and, after a careful examination of the whole case, as shown by the record, in the light of able and exhaustive argument on both sides, we are of opinion that the court below did not err in any material matter calculated to prejudice the rights of the appellant, or in refusing a new trial. Nothing has been shown, nor is there anything apparent upon the face of the record, which would authorize this court in interfering with the judgment rendered; and, therefore, the judgment must be affirmed.[1]

*Affirmed.*

---

[1] WHITE, J., did not sit in this case.