## JOHN WILLIAMS v. THE STATE.

1. VERDICT. — If, in the joint trial of several defendants, the finding of the jury as to some differs from their finding as to others, it is necessary that the verdict designate by their respective names the defendants to whom the findings severally relate. But in the trial of a single defendant, the verdict may designate him as "the defendant," without stating his name.

2. PROPER NAMES — MISNOMER. — There is no orthographical rule controlling the spelling of proper names. If the true and imputed names be *idem sonans* it is sufficient; and if they have a common derivation, even less particularity is requisite.

3. SAME — CASE STATED. — On trial of John *Williams* for theft, the verdict found "the defendant, John *William*," guilty. *Held*, that there is no uncertainty as to whom the verdict relates, and no material misnomer or variance; and that, under the authorities, the names are *idem sonans*. See the opinion *in extenso* on this question.

4. VERDICT — ASSESSMENT OF PENALTY. — A verdict which assesses the punishment at "five years' confinement in the penitentiary" sufficiently designates the duration and place of imprisonment. The law supplements the finding by prescribing that the imprisonment shall be at "hard labor."

5. VERDICTS are to have a reasonable construction and intendment, and are not to be avoided unless from necessity, originating in doubt of their import, or on account of the immateriality of the issue found, or a manifest tendency to work injustice.

APPEAL from the District Court of Victoria. Tried below before the Hon. H. C. PLEASANTS.

The opinion of the court discloses the case.

No brief for the appellant has reached the reporters.

*George McCormick*, Assistant Attorney-General, for the State.

WINKLER, J. Two errors are assigned upon which reliance is placed for a reversal of the judgment of the District Court, by which the appellant was adjudged guilty of theft of a gelding, and his punishment assessed at five years' confinement in the State penitentiary.

" 1. The court erred in overruling the defendant's motion for a new trial on the grounds set forth in his motion.

" 2. The court erred in its fourth instruction to the jury, inasmuch that the question of a violated possession is not explained, if such possession was violated."

Taking up first the second alleged error assigned : The judge, in his charge, in the first paragraph instructed the jury fully and clearly on the legal presumption of innocence and the reasonable doubt, in which connection the jury was charged " that the burden of proof rests always upon the State ; and if, therefore, the jury should have a reasonable doubt as to the guilt or innocence of the defendant in this cause, they must acquit him."

The second paragraph gives the jury the statutory definition of theft ; the third charges the jury correctly as to the province of the jury in relation to the credibility of witnesses and the weight of the evidence, and they were told that it was the province of the court to explain and expound the law to the jury ; and here follows the paragraph upon which error is assigned, in this language :

" 4. From the definition of theft the jury will perceive that to warrant a conviction for that offence in any case the jury must be satisfied from the evidence, beyond a reasonable doubt, first, that the property was taken without the consent of the owner, and that it was taken by the accused ; and, second, that it was taken with the intent to deprive the owner of the value of the property, and to appropriate the same to the use of the person taking."

In view of the objection taken to this portion of the charge in the assignment of error above set out, the charge sufficiently explains the manner in which the possession of the owner may be violated by another in order to warrant a conviction for theft ; and when considered in connection with the correct definition of the crime of theft, in a previous portion of the charge, and to which definition the attention

of the jury was called in the paragraph which is assigned as error, we find nothing of which the appellant can complain.

The charge, taken as a whole, was a concise, plain, and correct enunciation of the law of the case as made by the evidence, in which all the rights of the accused were properly guarded.

As to the other error assigned, to wit, the overruling of the defendant's motion for a new trial, we have not deemed it important to notice, specially, but two of the grounds set out in the motion, namely, the second and third, which are set out in the motion as follows :

"2. The verdict does not set forth the name of the defendant.

"3. The verdict does not state the place where the defendant shall be confined."

The verdict of the jury, as set out in the judgment of the court, and which is evidently intended to be a copy of that returned by the jury, is as follows : "We, the jury, find the defendant, John William, 'guilty' as charged in the indictment, and assess his punishment at five years' confinement in the penitentiary,"—signed by the foreman.  This entry of the verdict in the minutes is followed immediately by the following : "Wherefore it is considered, adjudged, and decreed by the court that the verdict be approved ; that the defendant, John Williams, be confined,  *  *  *  to await the further orders of this court."

As above intimated, we only find what purports to be the verdict of the jury copied into the judgment.  The actual finding of the jury and the verdict returned by them into court do not appear in the transcript; unless, indeed, we presume that the jury came into court, and, having agreed, caused the verdict to be written on the minutes of the court and then signed by the foreman,—which was hardly the case. In the absence of any other, we will presume that the verdict copied in the minutes is a correct copy of the verdict

returned by the jury, in considering the objections taken thereto in the motion for a new trial.

As to the objection that the verdict does not set forth the name of the defendant, we find that this objection is not sustained by the record, as will readily appear from the extracts from the minutes as above; unless, indeed, it be that in writing the name of the defendant the final letter " s " to the surname of the accused is omitted, making the name of the defendant, as set out in the verdict, " John William," and not " John Williams," as in the indictment, and elsewhere in the record, it is written. There is no intimation anywhere in the record that any but the one defendant was charged with the theft, or pleaded to the charge, or was testified to by the witnesses, or whose trial was had before the court and jury; or that John Williams was not the person tried and found guilty by the jury, and so adjudged by the court. The question, then, is, Does the omission of the letter " s," under the circumstances above set out, vitiate the verdict?

In the first place, we are of opinion that in cases like the present, when but one defendant is placed on trial, there can be no necessity for naming the defendant at all in the verdict. It would be sufficient in such a case for the jury to say in their verdict they *find the defendant guilty* or *not guilty*, as they in their retirement may determine, without naming the defendant; and it would be the same thing when more than one were placed on trial together, under the same plea, and the finding of the jury be the same as to all the defendants on trial.

If, however, more than one should be jointly tried, and the jury should determine to find a verdict as to one or more, differing from the verdict as to another or others on trial, it would in that event become necessary for the jury to name each defendant to whom a finding applies, to avoid confusion and render certain the finding of the jury as to

each defendant.    But none of these questions are involved in the present case.    It is conceded that if the jury say by their verdict that they find one person guilty, naming him, such verdict would be worthless as to another, and could not be the basis of a judgment of conviction and the infliction of punishment.    When it is important that a name be stated in judicial proceedings, or a name becomes important to the administration of the law, the name must be correctly stated.    If greater particularity is required in any one case than in another, it seems that it would be in stating the name of the party injured.    Still, we do not understand that the law requires that the name must be written in conformity to any rule of orthography.    In fact, it is said that there is no general rule of the kind applicable to proper names.    If the sound of the letters gives the pronunciation, or be, as expressed in the books, *idem sonans*, the demands of the law are satisfied.    It is well settled that in the employment of names of common derivation even less particularity is required.

· Mr. Chitty, in his treatise on criminal law, treating as to the name in the indictment (vol. 1, pp. 202, 203), says: "The name   *   *   *   of the party indicted ought, regularly, to be truly inserted in every indictment.   *   *   *   It seems, however, if the sound of the name is not affected by the misspelling the error will not be material" (citing numerous authorities).    The same author proceeds: "And if two names are, in original derivation, the same, and are taken promiscuously in use, though they differ in sound, yet there is no variance."

Mr. Bishop, after making the above quotation from Chitty, says: "This proposition comes from the fact that when one hears a particular form of a name spoken, or sees it written, his memory is impressed likewise with the other, and he employs the one or the other according to feeling or convenience, just as he does any other synony-

mous term in the language." 1 Bishop's Cr. Proc., sec. 689, where see examples of names having a common derivation.

The same writer, treating of orthography and the same sound (1 Cr. Proc., sec. 688), says: "The law does not take notice of orthography; therefore, if a name is misspelled, no harm to the prosecution can come of this, provided the name as written in the indictment is *idem sonans*, as the books express it, with the true name. It is sometimes a nice matter to determine when the names are of the same sound; and the courts do not, in this matter, hold the rule of identity with a strict hand." The writer then proceeds to give examples of names which have been held to be *idem sonans*, and among them refers in a note to *The State* v. *House*, Busb. 410, not now accessible, where it was held that *Michael* and *Michaels* were so.

This example is in principle identical with the objection we are now considering to the verdict. In that case, as in this, the difference in the two names consists in using the final letter "s" in one and omitting it in the other; and, for aught that we can discover, the employment or the omission of the final letter makes no greater variation in the sound than the same omission does in *Michael*. John William is to our minds as much like John Williams in sound as *Michael* is like *Michaels*. On these and similar authorities this court held, in *Goode* v. *The State*, 2 Texas Ct. App. 520, that as a Christian name *Mary Etta* and *Marietta* are *idem sonans*. See also *Foster* v. *The State*, 1 Texas Ct. App. 531, where, citing 1 Whart. Cr. Law, sec. 256, it is said a variance or omission in the name of the person injured by the commission of the offence is much more serious than a mistake in the name of the defendant in an indictment, for reasons there stated. This is not such a case, however; and there the point of omission is not decided.

This exception to the verdict cannot be sustained. The verdict clearly finds the defendant guilty. There was no necessity for the jury to state the name of the defendant in their verdict; and, in stating it, the apparently clerical omission of the letter "s" in writing his name does not vitiate their finding.

As to the second objection, that the verdict does not state where the defendant shall be confined, the law prescribes that the verdict must be general, and when there are special pleas upon which the jury are to find, they must say in their verdict that the matters alleged in such special pleas are either true or untrue; and "when the plea is not guilty, they must find that the defendant is either ' guilty ' or ' not guilty,' and, in addition thereto, they shall assess the punishment in all cases, when the same is not absolutely fixed by law to some particular penalty." Code Cr. Proc., art. 626 (Pasc. Dig., art. 3091). In the present case there were no special pleas. The accused pleaded *not guilty*.

Under the article of the Code quoted above, and under the state of case as shown by the record, it became the duty of the jury to find by a general verdict whether the accused was *guilty* or *not guilty*. This was their first duty; and having performed the primary duty of finding a general verdict that the defendant was guilty as charged in the indictment, it then became incumbent on them to perform the second duty under the law, rendered necessary in consequence of the first, *i. e.*, to assess the punishment. *Slaughter* v. *The State*, 24 Texas, 410. That not being absolutely fixed by law to any *particular penalty*, other than by " confinement in the penitentiary not less than five nor more than fifteen years," the jury in the present case, the charge being theft of a gelding, were required, in the language of the Code, to assess the punishment in accordance with the law, and within the limits prescribed by the law. Penal Code, art. 765 (Pasc. Dig., art. 2409).

The jury performed their primary duty by determining that the accused was guilty of the crime charged in the indictment, and their second, or subsidiary duty, by assessing his punishment within the limits prescribed by the Code, in almost the very language of the law itself, at five years' *confinement* in the *penitentiary*, which fixes the duration and the place of confinement with all the particularity the law requires. The balance is supplied by article 23 of the Penal Code, which declares : " Whenever the penalty prescribed for an offence is imprisonment for a term of years in the penitentiary, imprisonment at hard labor is intended." Pasc. Dig., art. 1676.

The following rule is laid down in Graham and Waterman on New Trials (p. 159, vol. 1,) where, after discussing the subject of verdicts in civil cases, it is said : " It has long been well settled that the courts will give validity to verdicts when they perceive the substance of the issue to be contained in the verdict, however rudely or informally the finding of the jury may have been expressed. In the language of Chief Justice Hobert, ' the court will work the verdict into form and make it sense.' For verdicts are to have a reasonable intendment, and to receive a reasonable construction, and are not to be avoided unless from necessity, originating in doubt of their import, or immateriality of the issue found, or their manifest tendency to work injustice." This rule of construing verdicts has been quoted substantially and approved in *Lindsay* v. *The State*, 1 Texas Ct. App. 327, where the verdict was : "We, the jury, find the defendant guilty of the crime, and fix his punishment at five years in the penitentiary." The court said : " We believe this verdict is responsive to the charge in the indictment, and is such a finding as will support the judgment." See also *Bland* v. *The State*, 4 Texas Ct. App. 15, where the verdict was : " We, the jury, find the defendant guilty, and assess the *find* against defendant one hundred dollars."

On the authority of Lindsay's case, citing Gra. & Wat. on New Tr. 159, and other authorities cited in the latter case, the verdict was sustained, upon the idea that it was evident from the context that in using the word *find*, in affixing the amount of punishment, the jury intended to use the word *fine*.

From these authorities we are of opinion that the verdict in the present case leaves no room for doubt; that the jury have clearly expressed an intention to find the accused guilty of the crime charged in the indictment, and to assess his punishment in the terms of the law.

The evidence being sufficient to warrant the jury in their finding, we are of opinion that the court did not err in refusing a new trial and entering judgment in accordance with the finding of the jury.

After a careful examination of the case as presented by the record, there being no appearance here by counsel for the appellant, we find no error in the proceedings below of which the appellant can complain, and the judgment is affirmed.

*Affirmed.*