· JOHN FRYE *v.* THE STATE.

1. CONTINUANCE. — Defendant in a murder case sought a continuance to procure proof that the deceased was a violent and dangerous man. The evidence at the trial concurred in showing that, at the time of the homicide, . the deceased was making no hostile demonstrations against the defendant. *Held,* that the desired evidence was not material, and no error is apparent in the refusal of the continuance.

2. JURY-LAW. — The act of 1876 known as the jury-law prohibits the summons of talesmen in capital cases within the court-house or yard, if procurable elsewhere; ·but the fact that a juror was summoned in disregard of this prohibition is not enumerated among the causes for challenge. In the present case the sheriff represented that he could not procure jurors elsewhere; and though defendant's peremptory challenges were not exhausted, he applied none of them to the juror so summoned, but reserved an exception based on the summons in the court-house. *Held,* not cause for a reversal of the judgment, there being nothing impugning the fairness and impartiality of the trial.

3. CHARGE OF THE COURT. — Though always advisable to give in charge to the jury the presumption of innocence in connection with the reasonable doubt, and though a refusal to give the presumption in charge, when asked, is error, yet the mere omission of it, when not asked, is not material error.

4. MEASURE OF PUNISHMENT. — Convicting the defendant of murder in the second degree, the jury assessed his punishment at ninety-nine years' confinement in the penitentiary, which is complained of as oppressive. *Held,* that, subject to the limitations prescribed by law, the measure of the punishment is a matter confided to the jury.

APPEAL from the District Court of Tom Green. Tried below before the Hon. A. BLACKER.

The indictment charged the appellant with the murder of Hubert Speth, on the 18th of May, 1879. The evidence was unusually concise and consistent, there being no controversy respecting the fact of the homicide, nor of the sole agency of the appellant in its commission.

Arthur White, testifying for the State, deposed that on May 20, 1879, he saw Hubert Speth shot and killed by the defendant, Frye, at St. Angelo, in Tom Green County. The deceased and "one of the Storks boys" were walking along the road together, and the defendant and another of

the Storks boys walking close behind them. "The Storks boy in front," says the witness, "drew his pistol and fired twice up in the air, and I then saw the defendant, John Frye, put a pistol (I don't know where he got it) up behind Speth's head and shoot him. Speth fell as soon as the shot was fired, and defendant then locked arms with the Storks boys and walked on, without stopping to look at Speth." The witness stated that he was about forty or fifty yards from the parties when the deceased was thus killed, about two o'clock in the afternoon. "When Speth was shot, he was doing nothing but walking along."

Dock Storks, for the State, testified that he and Hubert Speth, who was also called Joe Miller, were at St. Angelo, in Tom Green County, one Sunday afternoon in May, 1879. They were walking along together, Speth's right arm in witness's arm, and witness's brother and the defendant walking along behind. Witness was drunk, and pulled out a little pistol and fired it up in the air, and then heard a shot fired from behind, and Speth fell down on his face. "Defendant then came up and locked arms with me, and said to me, 'Dock, I have killed Joe, by G—d ; I had to kill him in self-defence.' I was afraid he would kill me. * * * At the time Hubert Speth was killed, he was doing nothing at all but walking along."

Other witnesses, who observed the deed from a short distance, gave a similar account of it, and the defendant repeatedly spoke of it in a boastful manner, though warned that his statements might be used against him. There was some evidence of a slight difficulty between the defendant and the deceased the day before the homicide.

All other facts of any significance appear in the opinion.

*A. P. Tugwell* and *D. Y. Portis*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. The appellant was indicted for the murder of one Hubert Speth, *alias* Joe Miller, alleged to have

been committed. in Tom Green County on May 18, 1879. An application for a continuance was made and overruled. The record recites that on the arraignment of the defendant, and after the indictment had been read to him, upon his being asked if he was guilty or not guilty, he "answered 'guilty,' which plea was not received by the court." The record further shows that he was tried on a plea of not guilty, found guilty by the jury of murder in the second degree, and his punishment assessed at confinement in the State penitentiary for the period of ninety-nine years; and judgment was entered accordingly. A motion for a new trial was overruled, and sentence pronounced in accordance with the verdict and judgment.

The errors assigned and reserved by bill of exceptions are, *first*, the refusal to continue the case on the application made by the defendant; and, *secondly*, because two witnesses averred to be material, and who had obeyed a subpœna every day, were not present in court when the case was called for trial, when an attachment was called for, and the defendant was forced to trial before the attachment was returned; *third*, that one of the jurors was summoned in the court-house, and after hearing the plea of the defendant on arraignment; and, *fourth*, that the court erred in admitting in evidence certain confessions made by the defendant at a time when, it is claimed, he was under arrest and in duress.

The presiding judge appends to the bill of exceptions the following: "I sign the foregoing bill of exceptions with the explanation that no application was made for continuance on the ground of the absence of J. M. Morris and J. Storks, and that they were material witnesses on the trial of this cause. An application was made and sworn to, and, when presented for the action of the court, the two first grounds were alone considered, as the witnesses named in the application were present, and to that extent was withdrawn by defendant's counsel. The defendant's counsel applied for attachments for said Morris and Storks on the morning of the day of the

trial, which were issued, and the trial postponed until the afternoon of said day, when the trial proceeded. It not appearing to the court that Morris and Storks were material witnesses, the court declined to delay the trial for the return of the attachments. G. W. Delong was summoned by the sheriff in the court-house, and stated that he could not find jurors elsewhere; the defendant, although his peremptory challenges were not exhausted, did not challenge said Delong. The court is satisfied that the panel for the trial of said cause could not have been filled without unreasonable delay, except by summoning said G. W. Delong on said jury."

Turning to the application for a continuance alluded to in the first paragraph of the bill of exceptions, we find that it embraces two grounds: *first*, that the affiant expected to procure documentary evidence from St. Louis, Missouri, that the person he is charged with having wounded was a refugee from justice, being indicted in the latter city for the crime of murder, and was a man of violent and dangerous character; *second*, that he expected to procure testimony that the person for whose murder he is indicted had made a violent assault upon one Price, and fired three shots at him without provocation, and was known in Coleman County as a violent and dangerous man. It is enough to say, with reference to this exception, that the testimony for which a continuance was asked could only have availed the defendant on a question of self-defence, and in looking at the case as presented by the record we see no room for the plea of self-defence to be interposed. So far as the testimony goes, the deceased was not making or attempting to make any demonstration against the life or the person of the defendant, or endeavoring to injure his person in any manner, either before or at the time the fatal shot was fired, nor is there any evidence of a threat even to do so; so that we fail to discover any injury to the rights of the appellant by the ruling in question. The several matters set out in

the other clauses of the bill of exceptions are fully explained
by the remarks of the judge appended thereto, by which
the correctness of the ruling is fully vindicated, and from
which it appears that no legal right of the accused was
prejudiced.

With reference to the juror alleged to have been sum-
moned in the court-house, it is sufficient to say that, as
shown by the statement of the judge, the appellant did not
challenge him, and his peremptory challenges had not been
exhausted. In considering a similar question, in that a juror
had been summoned in violation of the jury-law of 1876,
this court said, in *Matthews* v. *The State*, 6 Texas Ct. App.
23 : " This objection not being found among the causes
for challenge enumerated in the statute, we are inclined to
the opinion that it would be regarded as directory, unless it
should be shown that a contrary rule would tend to deprive
one accused of crime of a fair and impartial trial." Even the
fact that one who is not a competent juror had sat upon the
jury would not be ground sufficient to grant a new trial or
reverse a judgment on appeal, if the fact could have been
discovered when the jury was empanelled, by the use of
proper diligence. *Roseborough* v. *The State*, 43 Texas,
570 ; *O'Mealy* v. *The State*, 1 Texas Ct. App. 180 ; and
*Matthews* v. *The State*, above cited.

It is urged in the brief for the appellant that the charge
of the court was defective in that it did not charge the pre-
sumption of innocence. We had occasion to consider this
precise question, and to review the authorities accessible, at
the present term of the court, in the case of *Hutto* v. *The
State*, ante, p. 44. It was then said : " With regard to the
presumption of innocence, while it has ever been held a
ground of reversal where the court has refused to give it
when properly asked, and whilst it is generally agreed that
it would always be better for the court to give it in charge,
in connection with the reasonable doubt, in the language of
the statute,  *  *  *  yet we know of no case in our own

or other States which has gone to the extent of reversing a judgment for the want of such an instruction, when it was not expressly asked and refused." See Hutto's case for authorities. Following the rule as there laid down, we cannot regard the failure to charge the presumption of innocence as ground to reverse the judgment. If the charge had been asked and refused, the case would perhaps be different.

It is urged in argument that the punishment is oppressive, and that the testimony would have warranted milder punishment. It is the business of the court to see that the testimony is sufficient to warrant the verdict, but, so that the punishment imposed is within the limit fixed by law, the jury must grade the amount.

Having carefully considered the case as made by the record, in the light of the brief of appellant's counsel, we fail to discover any such error committed on the trial as would warrant an interference with the verdict and judgment. The judgment is affirmed.

*Affirmed.*