## THOMPSON v. THE STATE.

CRIMINAL LAW—*Continuances*—Continuances in criminal, as well as in civil cases, as a general proposition, are within the sound discretion of the court, and its refusal to grant a continuance is never ground for a new trial, unless it clearly appears to have been an abuse of such discretion, and manifestly operates as a denial of justice.

VERDICTS—*When set aside—improper influences.*—The provisions of the Criminal Code of Practice, to protect a jury from improper influence, are directory and cautionary, and the omission of the court, in the conduct of a trial, to comply with them, will not, of itself, vitiate a verdict or be cause for a new trial, without some evidence that some prejudice or injury has resulted to the defendant in consequence of the omission.

Where evidence is adduced and shows that the jury were not in anywise influenced, biased or prejudiced by the exposure, the verdict will not be disturbed.

*Should find degree.*—In an indictment for murder, if the jury find the accused guilty; they should find, by their verdict, whether it be murder in the first or second degree; and if they fail so to find, by their verdict, the degree of guilt, it cannot be ascertained by reference to the indictment.

REQUISITES OF INDICTMENT—The Code of Criminal Practice, except in respect to particular words employed in the description of certain offenses, is not to be held as dispensing with the clearness and certainty, in charging the offense, recognized by the former practice and the common law.

*Appeal from Yell Circuit Court.*

Hon. William N. May, Circuit Judge.

*Garland & Nash,* for appellant.

In a case of felony, the defendant waives nothing that the record shows to be defective, unless there is an express waiver; and on error or appeal he has the benefit of all objections that he might have urged below. *Sweeden's case, 19 Ark., 205; Friel's case, 21 Ark., 212.* The indictment is not in form and charges no offense specifically. *Code of Practice p 288, sec 122; .Gould's Digest, 327 et seq.* for definition of murder; *Edward's case, 25 Ark. 444.* The jury was not drawn as required by law, nor was there a waiver by the parties. *Code p 302, secs. 123–4.* The jury were not sufficiently sworn. *Code p 307–8, .sec 219; Gould's Digest, p 467, (6 oath), b. in criminal cases, secs. 28 to 34.* The verdict should have stated the degree of murder ·or homicide the party was guilty of. See *Gould's Dig., 327– 8–29, et seq.* for murder, manslaughter, etc., and the following ·cases: *Sec. 7, 328, Gould's Dig.; 19 California, 426; 23 N. Y. (9 Smith) 293; 6 California, 543; 12 Md, 514; 6 Mich., 273; 7 Clark (Iowa) 236; 24 Texas, 410; 20 Mo. (5 Bennett) 319; 24 Penn. (12 Harris) 389–90; 6 Ind. 485; 3 ib. 438; 39 N. Y. 245.* The testimony of Thompson's daughter and Mrs. Julia Lee ·should have been admitted. *Pitman v. State, 22 Ark. 354,* and ·cases cited; *Roscoe Cr. Ev., p 23; 1 Phil. Ev. 234; 2 ib. Cowen and Hill's Notes, pp. 588–9, et seq; 1 Greenl. Ev., sec 101.* The motion for continuance should have been granted. *Whar. ·Crim. Law, p 832 (2 ed) (a); see 2 Head., 217 (Tenn.); 3 Steward & Porter (Ala.) 308; 5 Georgia, 137; Cotton's case, 31 Miss., 504; Meredith's ·case, 18 B. Monroe (Ky) 49.* For the same reasons the record motion to continue should have been granted. The separation of the jury was good ground for new trial, and the offer to show these irregularities, should have been received. *12 Ark. 810–13; ib. 317; 20 Ark. 53; Wharton Sup. 895; Gra- .ham & Waterman, New Trials, vol 2, 537 et seq; 1 Chitty Crim.*

*L. Marg.*, pp 628–9; 7 New Hamp., 287; 15 Penn. (3 Harris) *Pfeifer v. Commonwealth*, p 468, et seq. The sixth and seventh instructions were calculated to mislead the jury, and should not have been given. 6 Eng. (11 Ark.) 460; 2 Bishop Crim. L. 630. The offer to show, by Martin's own affidavit, that he was not properly sworn, should have been received. See *Code sec. 243, Crim. Pr.*; as, also, the offer to show the jury was not admonished. See *Code, sec. 244, Crim. Practice.*

*Montgomery, Attorney General*, for appellee.

A verdict of the jury, that the defendant is guilty, as charged in the indictment, is a good verdict of guilty of murder in the first degree, if the indictment is good, and charges murder in the first degree.

Is the indictment, in this case, good, and does it charge the crime of murder in the first degree? It is good, and charges that crime. *Friel v. The State*, 21 Ark., 213: *Brown v. The State*, 10 Ark., 607; *Bishop Crim. Pr.*, 832 to 834, and cases cited.

As to the question of the jury being placed in charge of a sworn officer, see *Gibbons v. The People*, 23 Ill. 518; *Stow v. The State*, 4 Humph. 27; 1 Bishop Crim. Pro. 820 to 828, and cases there cited.

HARRISON, J.

The appellant was indicted in the Johnson circuit court, at the September term, 1870, for the murder of David C. Stillwell.

The indictment was as follows:

"JOHNSON CIRCUIT COURT.

"The State of Arkansas }
      against        } Murder.
"Joseph Thompson.    }

"The grand jury of the county of Johnson, in the name and by the authority of the State of Arkansas, accuse Joseph Thompson of the crime of murder, committed as follows, to wit: The said Joseph Thompson, on the 14th day of May A. D. 1870, in the county of Johnson, in the State aforesaid, did

premeditatedly, willfully and maliciously, with double-barreled shot-gun, loaded with gunpowder and leaden bullets, kill and murder one David C. Stillwell, against the peace and dignity of the State of Arkansas.

"T. M. GIBSON, *Prosecuting Atty. pro tem.*"

The defendant applied for a change of venue, and the case was removed to the county of Yell.

At the November term, 1870, of the circuit court of that county, he was put upon his trial and the jury returned the following verdict:

"We, the jury, find the defendant guilty, as charged in the indictment."

He moved for a new trial, but his motion was overruled, and judgment and sentence of death were pronounced against him.

Various exceptions were reserved by the defendant, in the course of the proceedings, and assigned as grounds for a new trial; but, as it appears from his bill of exceptions, that much of the evidence was not preserved, and that it contains only such as was deemed most important, such of them as were predicated upon the evidence cannot be considered by us; for it would be impossible to determine, without having the whole of the evidence before us, whether they were well taken or not; but must presume that the decisions of the court were correctly made, according to the maxim, *omnium praesumuntur rite et solemniter esse acta donec probetur in contrarium.*

The first ground of the motion was the refusal of the court to allow a continuance of the case.

The defendant made two applications for a continuance. The first on the 15th day of November, on account of the absence of certain of his witnesses and counsel. The court, upon overruling this, set the case for trial on the 20th, in order, as the bill of exceptions states, to afford the defendant an opportunity to procure the attendance of his witnesses.

On the 23d of the same month, he made the second application, on account of the absence of other witnesses, and two of the same. No other facts or circumstances of the case were

stated in his motion than those he alleged he expected to prove by the absent witnesses, which were, in substance, that the deceased was a violent, turbulent and dangerous man, who commonly went armed, and who boasted of having killed one or two men; that on several occasions, shortly before the killing, he made threats against the life of the defendant, and that he and his brother, Green Stillwell, and brother-in-law, P. H. Morgan, had actually formed a conspiracy to kill him, which facts were well known to the defendant before the deceased was killed.

It would seem reasonable to presume that the defendant's last motion for a continuance set forth all the grounds for it that then existed. The exception taken to the refusal of his former application must, therefore, be considered as waived by the latter.

The granting of continuances in criminal, as well as in civil cases, is, as a general proposition, within the sound discretion of the court, and its refusal to allow a continuance, is, therefore, never ground for a new trial, unless it clearly appears to have been an abuse of such discretion, and manifestly operates as a denial of justice. The motion for the continuance, not setting forth the facts or circumstances tending to prove that the killing of the deceased was in necessary self-defense, or otherwise show the relevancy or materiality of the testimony of the absent witnesses to the defendant's defense, no prejudice or injury appears to have resulted to him from the denial of the continuance.

The other grounds of the motion, that we are called upon to notice, and which may be considered together, are:

*First.* That the officer in charge of the jury was not sworn to keep them together, and to suffer no person to speak to or communicate with them on any subject connected with the trial, during the adjournment of the court.

*Second.* That the jury were not admonished by the court, at its adjournment, that it was their duty not to permit any one to speak to or communicate with them on any subject con-

nected with the trial, and that they should not converse among themselves on any subject connected with the trial, or form, or express any opinion thereon, until the cause was finally submitted to them.

*Third.* That three of the jurors, each on a different occasion, separated themselves from the panel, and went from the jury room, in company with an officer who had not been sworn as required by the statute, the others, meanwhile, remaining without an officer in charge of them.

Courts certainly should be very careful to protect the jury from every improper influence; and the provisions of the Code, designed for that purpose, should never be disregarded. These provisions are, however, directory and cautionary only, and a failure to comply with them will not absolutely, or without some evidence that some prejudice or injury has resulted to the defendant, in consequence of an omission to comply with them, vitiate the verdict, and be cause for a new trial.

The conclusion to be derived from the former decisions of this court, and which seems to be well supported by the authorities, as to the consequence of the misconduct of jury, in cases of mere exposure to improper influences, we understand to be this: Where evidence is adduced, and shows that the jury were not, in any way, influenced, biased or prejudiced by the exposure, the verdict will not be disturbed; but unless it is proven that it failed of an effect, the presumption will be against the purity of the trial, and the verdict will be set aside.

But it does not appear that there was any direct exposure. The jurors, who left the panel, were accompanied by the officer in charge of them, who, we must presume, did his duty and kept them out of the way of all improper influences; and there is no reason for supposing the others might have been exposed to any during his absence.

The motion for a new trial, we think, was properly overruled; but our attention is directed to the verdict and the in-

dictment. The jury did not find, by their verdict, the degree of murder of which they found the defendant guilty.

By the statute, murder is classed according to the circumstances in which it is committed, into first and second degrees, the punishment of the first being death, and for the latter, imprisonment in the penitentiary; and, on the conviction of the accused of murder, the jury are required to find, by their verdict, whether it be murder in the first or second degree. These two degrees are not, however, distinct offenses, and no distinction as to degree is made in charging the offense; the same averments which are necessary to charge murder in the first degree, are also required to charge it in the second; and if, upon an indictment for murder, the jury find the deceased guilty but fail, as they did in this case, to find, by their verdict, the degree of guilt, it cannot be ascertained by reference to the indictment. *2 Bishop on Criminal Proceedings, sec. 565.*

In the case of *The State v. Moran*, 7 *Iowa.* 236, the Supreme Court of Iowa says:   " It is said, however, that the indictment charges the crime of murder in the first degree, and that when the jury, by their verdict, found the defendant "guilty as charged in the indictment," they did, in legal effect, ascertain that he was guilty in the degree charged.   This argument, however, leaves it to the court to deduce the intention of the jury from a verdict, general in its language, whereas the law requires that the jury shall find specifically the fact, whether guilt is of the first or second degrees.   When jurors find, by their verdict, that a prisoner is "guilty," or "guilty as charged in the indictment," it is not assuming too much to say that, as a general thing, they have simply found him guilty of a criminal homicide, without reference to the degree of his guilt. And to say that, upon such a verdict, the court might properly conclude that they intended the highest offense, would be to presume against, instead of in favor of, human life."

And, in Alabama, where they have a statute similar to our own, in a case where the indictment charged the murder to have been committed by poison, the Supreme Court of that

State held, that a judgment could not be rendered upon a conviction upon it, without the degree of the crime being ascertained by the jury. _Johnson v. The State, 11 Ala., 618; McCauley v. The United States, 1 Morris, 476; Kirby v. The State, 7 Yer., 259; Dick v. The State, 3 Ohio S., 89; The State v. Upton, 20 Mo., 397; Slaughter v. The State, 24 Texas, 410; Ford v. The State, 12 Md., 514; Commonwealth v. Gardner, 11 Gray, 438; Commonwealth v. Desmartean; Ib., 8; Green v. Commonwealth, 12 Allen, 170._

It is a well established rule, in criminal law, that an indictment must contain such a description of the facts and circumstances as constitute the offense charged; that the person accused may be informed of the specific charge which he is called upon to answer, and the court and the jury the issue they are to try.

Russell, speaking of an indictment for murder, says: "The indictment should, in all respects, be adapted as closely to the truth as possible. It is essential to set forth particularly the manner of the death, and the means by which it was effected." _1 Russell on Crime, 557._

Lord HALE says: "An indictment is nothing else but a plain, brief and certain narrative of the offense committed by any person, and of those necessary circumstances that concur to ascertain the fact and its nature." _2 Hale, 169._

Lord ELLENBOROUGH, in the case of _The King v. Stevens and Agnew, 6 East., 239,_ said: "Every indictment or information ought to contain a complete description of such facts and circumstances as constitute the crime, without inconsistency or repugnancy."

And, in the case of _The King v. Horne, Cowp , 672,_ Lord Chief Justice DeGREY observed: " The charge must contain such a description of the offense that the defendant may know what crime it is with which he is called upon to answer, that the jury may appear to be warranted in their conclusion of guilty or not guilty, upon the premises delivered to them, and that the court may see such a definite crime that they may

apply the punishment which the law prescribes. This I take to be what is meant by the different degrees of certainty, mentioned in the books; and it consists of two parts—the *matter* to be charged, and the *manner* of charging it. As to the matter to be charged, whatever circumstances are necessary to constitute the crime imputed must be set out, and all beyond are surplusage."

The Supreme Court of Ohio, in the case of *Lambertin v. The State, 11 Ohio, 282*, says: "It is a rule of criminal law, based upon sound principles, that every indictment should contain a complete description of the offense charged; that it should set forth facts constituting the crime, so that the accused may have notice of what he is to meet, of the act done which it behooves him to contest, and so that the court, applying the law to the facts charged against him, may see that a crime has been committed."

And Chief Justice RINGO, in delivering the opinion of this court in Graham *v*. The State, says: "The object of that certainty required in an indictment is to notify the accused of the specific charge made against him, and to show the court that the offense charged is indictable. The phraseology should therefore be so explicit and unambiguous as to be intelligible to the accused and to the court, and prevent another prosecution for the same offense in the event of a conviction or acquittal on the writs." *Graham v. The State; 1 Ark., 171.*

The indictment which, so far as it pertains to form, is in that prescribed by the Code, charges that the defendant did, premeditatedly, willfully and maliciously, with a double-barrel shot-gun, loaded with gun-powder and leaden bullets, kill and murder one David C. Stillwell, against the peace and dignity of the State of Arkansas.

We do not conceive that the Code, except perhaps, in respect to the particular words of art employed in the description of certain offenses, dispenses with the clearness and certainty in charging the offense recognized by the former practice, and the common law. Section 121 says the indictment must con-

tain "a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended." And section 123 says: "The indictment must be *direct and certain*, as regards, first, the party charged; second, the offense charged; third, the county in which the offense was committed; fourth, the particular circumstances of the offense charged, where they are necessary to constitute a complete offense."

In Kentucky, where the provisions of their Code, in relation to indictments are exactly similar to ours, the court of Appeals, in Mount *v*. Commonwealth, *1 Duv., 90*, says: "The principle has been repeatedly recognized and acted on by this court, that an indictment must set forth the offense with such degree of certainty as will apprise the defendant of the nature of the particular accusation on which he is to be tried, and as will enable him to plead the indictment and judgment thereon in bar of any subsequent prosecution for the same offense." And in Taylor *v*. Commonwealth, *ib., 160*, it says: "The facts necessary to constitue the offense must be alleged, and that it is not sufficient that the essential facts may be inferred from those which are stated." *Com. Dig., Indictment, (G. 3)*.

In the indictment before us there is nothing but the general and indefinite charge that the defendant killed and murdered the deceased with a double-barrelled shot-gun, loaded with gunpowder and leaden bullets. The particular facts and circumstances of the killing, by which it might judicially appear that the offense had been committed, and the accused be sufficiently informed of the true nature of the charge against him, so that he might be able to prepare for his defense, are not attempted to be set forth.

For the insufficiency of the indictment and the defect in the verdict, the judgment is reversed, and the cause will be remanded with instructions to arrest the judgment and to quash the indictment; and the defendant will be ordered to be detained in custody to answer a new indictment.