CASES DETERMINED

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE

## INDIAN TERRITORY.

WILLIAMS VS UNITED STATES.

(88 S. W. Rep. 334).

Opinion delivered October 19, 1905.

1. *Criminal Law—Continuance—Absence of Witnesses.*

In a trial for murder defendant was granted a continuance from May 20, 1903, to the next term of court, which was the following January. On December 26, 1903 defendant caused subpoena to issue for absent witnesses which was returned not found and second motion for continuance overruled. *Held;* That the court acted correctly in refusing the continuance.

2. *Criminal Law—New Trial—Newly Discovered Evidence.*

Where a motion for a new trial is based upon affidavit, which is vague and indefinite. Not error in refusing new trial.

3. *Criminal—Change of Venue.*

In granting a change of venue the application shall be by petition, supported by affidavit of some credible person, and where such petition is filed and the prosecuting attorney filed counter affidavits showing that affiant in application for such change of venue, was a person of bad moral character and unworthy of credit as a witness; and defendant fails to file affidavits to sustain affiant's credibility. *Held;* That it is within the discretion of the court to receive the oral testimony of witness as to facts affecting their own credibility and the court did not err in denying either of appellants applications for a change of venue after permission had been granted to

(2)

withdraw witnesse's affidavit, as the statute had not been complied
with.

4.  *Criminal Law—Evidence.*

Evidence of the use of opium by witness cannot be introduced to
impair credit, unless it be shown that the witness was under the
influence of opium when examined. It is likewise inadmissible in
order to attack veracity to prove the bad character of a female
witness for chastity, or to show she is a prostitute.

5.  *Criminal Law—Weapons—Instructions.*

Where the court instructed the jury that deceased had a right to
draw his gun, and, if defendant pressed upon him, he would have
a right to use it, *Held;* Evidence sufficient to support such in-
struction.

6.  *Criminal Law—Instructions—Assignment of Error.*

An assignment of error directed to an instruction to which no exception
is made. *Held;* Is not well taken.

7.  *Criminal Law—Instructions—Manslaughter.*

It is not error for the court to refuse an instruction as to what con-
stitutes manslaughter when there is no evidence tending to prove
the same.

8.  *Criminal Law—Instructions—Assumption of Facts.*

It is error for the court to assume facts in an instruction not authorized
by the evidence.

9.  *Criminal Law—Jurors—Bailiff.*

In the absence of a contrary showing it is presumed that the oath of
the officer having custody of the jury as required by statute was
properly administered.

10.  *Criminal Law—Admonishing Jury.*

No objection being made or exception saved to admonishment of jury
by the court. *Held;* Presumption is that the court did his duty,
and hence there was no error.


Appeal from the United States Court for the Central
District.

WM. H. H. CLAYTON, Judge.

Grant Williams was convicted of murder. He appeals. Affirmed.

On the 5th day of December, 1901, defendant, appellant here, was indicted for the murder, on October 8, 1901, of one Ed. Dolan, which indictment is as follows:

"The grand jurors of the United States of America, duly selected, summoned, impaneled, sworn and charged to inquire within and for the body of the Central District of the Indian Territory aforesaid, at South McAlester, in the name and by the authority of the United States, upon their oaths do find, present and charge that one Grant Williams, who was not then and there a member of any Indian tribe or Nation, on the 8th day of October, A. D. 1901, within the Central District of the Indian Territory aforesaid, with force and arms, in and upon the body of one Edward Dolan, then and there being, feloniously, willfully, and of his malice aforethought, did make an assault; and that the said Grant Williams with a certain gun then and there charged with gunpowder and one leaden bullets, which said gun he, the said Grant Williams, in his hand then and there had and held, then and there feloniously, willfully, and of his malice aforethought, did discharge and shoot off, at, to, against, and upon the body of the said Edward Dolan, and that the said Grant Williams, with the leaden bullets aforesaid, out of the gun aforesaid, then and there, by force of the gunpowder aforesaid, by the said Grant Williams discharged and shot off as aforesaid, then and there feloniously, willfully, and of his malice aforethought, did strike, penetrate and wound him the said Edward Dolan in and upon the neck of him the said Edward Dolan, giving to him the said Edward Dolan then and there, with the leaden bullets aforesaid, so as aforesaid discharged and shot out of the gun aforesaid by the said Grant Williams in and upon the neck of him the said Edward Dolan one mortal wound, of which said mortal wound,

he the said Edward Dolan then and there instantly died. And so the jurors aforesaid, upon their oaths aforesaid, do say that upon the day and year aforesaid, and at the place aforesaid, the said Grant Williams him the said Edward Dolan in the manner and by the means aforesaid, feloniously, willfully, and of his malice aforethought, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

Defendant was arraigned on May 18, 1903, and pleaded not guilty, and on May 20, 1903, defendant filed motion for continuance, which was by the court allowed. On January 12, 1904, defendant filed his motion for change of venue, alleging that the inhabitants of the Central District are so prejudiced against him that he cannot obtain a fair and impartial trial of his cause therein, to which motion was attached an affidavit made by J. H. Walton and U. S. Goings, which in part was as follows:

"That the people of Craig, Haileyville and Hartshorne are very hostile to the defendant and that they believe that the minds of the inhabitants of the whole of the South Mc-Alester Court Division of the Central District of the Indian Territory are so prejudiced against him that he cannot obtain a fair and impartial trial of his cause therein."

Upon the hearing of said motion for a change of venue, the court permitted the District Attorney to bring said J. H. Walton and U. S. Goings into court and cross examine them, and upon said cross examination it was developed, that said Walton and Goings had heard of the crime for which defendant was charged, but had not heard the question of public sentiment or public feeling toward the defendant discussed and had no knowledge of the same except what they were told by Mr.

Tarter one of defendant's counsel, and that it was from the information received from him that the affidavits were made, defendant's counsel also stating to said witnesses that the making of the affidavit for a change of venue was simply a mere matter of form, and that its purpose was to get a continuance. Whereupon the court overruled the said motion for change of venue; and on January 15, 1904, defendant filed motion for continuance, which was also overruled. And thereafter, on the 18th day of January, 1904, this cause came on for trial before a jury, and on January, 19, 1904, the jury returned into court the following verdict:

"We the jury find the defendant, Grant Williams, guilty of murder as charged in the within indictment."

Defendant filed motion for new trial on February 3, 1904, and on same day filed his amended motion for new trial, which motions were overruled, and on same day the court rendered judgment as follows:

"* * * it is considered by the court that the said Grant Williams be deemed, taken and adjudged guilty of the crime of murder, and it is ordered by the court that the said Marshal of this district cause the said Grant Williams to be taken hence, and him the said Grant Williams safely and securely keep, from the date hereof, until Friday the 18th day of March, A. D. 1904, and on that day between sunrise and sunset of said day, the said Marshal cause the said Grant Williams to be taken to some convenient place within this district, to be appointed by said Marshal, and then and there, between sunrise and sunset on Friday the said 18th day of March in the year of Our Lord Nineteen Hundred and Four, cause the said Grant Williams to be hanged by the neck until he is dead.

And it is further considered by the court that the United States of America do have and recover all their costs in and about this prosecution laid out and expended and that they have execution therefor.

And the clerk of this court is hereby required to furnish the marshal of this district with a duly certified copy of this judgment, sentence and order, which shall be returned by said marshal with a full and true account of the execution of the same.

Whereupon defendant by his attorney prays an appeal herein and is allowed 20 days in which to prepare and file his bill of exceptions herein."

*Wiley H. Jones* (Robt. Tarter, of counsel) for appellant.

*J. H. Wilkins*, United States Attorney, for appellee.

TOWNSEND, J.   Appellant has filed eighteen assignment of errors, as follows:

"1.   There is no competent evidence in the record to support the verdict.

2.   The court erred in overruling and disallowing appellant's motion for a continuance.

3.   The court erred in overruling and disallowing appellant's motion for a new trial in that particular in which it is based upon newly discovered evidence.

4.   The court erred in overruling and disallowing appellant's motion and application for a change of venue and in allowing the district attorney over appellant's objection to bring the witnesses making the supporting affidavit for a change of venue into open court and cross examine them, and in submitting

to the witnesses making the affidavit the alternative of either withdrawing the affidavit or of having the master of making it investigated by the grand jury.

5.   Persons of appellant's own race having been excluded by the grand jury preferring the indictment against him because of their race and color, he has been denied the equal protection of the laws guaranteed by the constitution, which is now assigned as error.

6.   The court erred in excluding from the jury the following question and answer propounded to witness Anna Cook:  'Is Eliza Dixon, witness for the government, a coke friend, meaning a cocaine fiend?'  Ans. 'Yes.'  And excluding from the jury the same question and answer thereto propounded to Henderson Covington.  Also in excluding from the jury expert medical testimony to the effect that the excessive use of cocaine makes of its user a liar and unreliable.

7.   The court erred in charging the jury as follows:   If Berger was in the car and the defendant approached him in a threatening manner so as to indicate to Berger that he was in danger from this man then Berger had the right to draw his gun and if the defendant pressed upon him he would have the right to use it.'

8.   The court erred in charging the jury as follows:  'If Lee Berger was at a place where he had a right to be, attending to his duties, and the defendant armed himself and went there expecting a conflict then the defendant was the assailant.'

9.   The court erred in charging the jury as follows:  'No man can take another man's life and justify it before a jury on the ground of self defense unless he is prepared to show that there was a necessity to take that man's life, and in order to show

that it must appear that the danger to his own life or of receiving great bodily harm from the hands of the deceased was then and there hanging over him and about to fall upon him and that he could not prevent it except by slaying his adversary.'

10. The court erred in charging the jury as follows: 'In ordinary cases of one person killing another in self defense it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm the killing of the other person was necessary.'

11. The court erred in charging the jury as follows: 'The defendant's defense is "I did not do the act." You understand that as far as the killing of Berger is concerned this defendant is not charged with that in this indictment, you are not trying him for killing Lee Berger. The proof of the killing of Berger, however, is before you not because you are to convict him for killing that man only for the purpose of characterizing his acts and conduct and as throwing light upon his action and motives in regard to the killing of the other man. That is the only reason that evidence is before you, it being so closely connected with the other case that it becomes a part of the res gestae of the transaction. The case could not be intelligently tried without telling the whole story of the killing of both.'

12. The court erred in failing and refusing to charge the jury on the law of manslaughter and announcing from the bench, 'I do not charge you as to the law of manslaughter.'

13. The court erred in refusing to submit to the jury the request following: 'If you should be of the opinion that the defendant is guilty of some offense but should entertain a reasonable doubt as to whether he is guilty of murder or man-

slaughter it will be your duty to acquit the defendant of murder and convict him of manslaughter.'

14. The court erred in refusing to submit to the jury the request following: 'If you should entertain a reasonable doubt as to the defendant's guilt of the charge of murder but entertain no such doubt as to his guilt of manslaughter it will be your duty to acquit the defendant on the charge of murder and convict him of manslaughter.'

15. This cause should be reversed and a new trial granted because the record fails to show that the jury upon adjournment of the court and upon being respited to the morning following were placed in charge of an officer sworn as the law directs.

The record shows the following: 'And after hearing a portion of the evidence, it being adjourning time, said jury was put in charge of a sworn bailiff, ordered kept together and lodged and fed at the expense of the Government.'

16. This cause should be reversed because the record fails to show that the jury upon being respited until the morning following were returned into court in charge of the same officer in whose custody they were placed upon being respited..

The record entry is 'also come the jury heretofore empaneled for the trial of this cause in charge of a sworn bailiff and take their seats in the jury box, etc.'

17. The court erred in not admonishing the jury as required by statute upon them leaving the presence of the court that it is their duty not to permit any one to speak to or communicate with them on any subject connected with the trial, etc.

18. The court erred in overruling and disallowing appellant's motion for a new trial and in passing sentence upon him.''

As to the first assignment we will say, that we have read the testimony brought up by the bill of exceptions in this case, and are thoroughly convinced that the jury were fully justified in returning the verdict they did, and hence we are of the opinion that this assignment is not well taken.

As to the second assignment, it appears from an examination of the record that the indictment in this case was returned by the grand jury on December 5, 1901, and filed by order of the court. That on May 18, 1903, the defendant was formally arraigned and plead not guilty. That on May 20, 1903, defendant filed his motion for continuance, which was granted, and case continued until the next term of the court and set for trial on the second Monday of the next term. On January 12, 1904, defendant filed his application for change of venue, which, on January 15, 1904, was overruled by the court, to which defendant excepted, and on same day defendant filed motion for continuance, supported by his own affidavit, that the evidence of certain witnesses therein named was material to his defense. It appears that a subpoena for said witnesses was issued December 26, 1903, but they could not be found. It thus appears that from May 20, 1903, until December 26, 1903, no step was taken to secure the attendance of witnesses. The court overruled the motion for continuance. In Jackson vs State, 54 Ark. 243, the court quotes with approval Thompson vs State, 26 Ark. 323, as follows:

"In Thompson vs State, 26 Ark. 323, it was held that continuances in criminal as well as in civil cases are, as a general rule, within the sound discretion of the court, and that, a refusal to grant a continuance 'is never ground for a new trial, unless it clearly appears to have been an abuse of such discretion, and manifestly operates as a denial of justice.'" In Loftin, et al vs State, Use, etc., 41 Ark. 156, the court said:

"It must be a flagrant instance of the arbitrary or capricious exercise of power by the Circuit Court, operating to the denial of justice, that will induce us to interfere." We are of the opinion that the court acted correctly in refusing the continuance.

As to the third assignment, that the court erred in not granting new trial on ground of newly discovered evidence, the motion is based upon the affidavit of Bob Hill, a negro, which is vague and indefinite. He states that a colored man came to his restaurant in South McAlester and made statements about the case. "That said colored man was unknown to affiant, that affiant did not make inquiry to his name not knowing anything about the case or the circumstances of the killing and in no way interested in it and does not know the whereabouts of said colored man." We do not think the court erred in refusing new trial on ground stated.

The fourth assignment is overruling motion for change of venue. Granting change of venue is regulated by Mansfield's Digest, sections 2195 and 2196, which are as follows:

"Sec. 2195. Any criminal cause pending in any Circuit Court may be removed by the order of such court, or by the judge thereof in vacation, to the Circuit Court of another county, whenever it shall appear, in the manner hereinafter provided, that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial can not be had therein.

Sec. 2196. Such order of removal shall be made on the application of the defendant by petition setting forth the facts, verified by affidavit, if reasonable notice of the application be given to the attorney for the state, and the truth of the allega-

tions in such petition be supported by the affidavit of some credible person." It thus appears that the application shall be by petition, supported by affidavit of some credible person, reasonable notice to be given to the attorney for the state. In Curtis vs State, 36 Ark. 286, the court said:

"The prosecuting attorney filed the counter-affidavits of four persons, in which they severally stated, in substance and effect, that they were well acquainted with Silvia Finch; that she was of bad moral character and unworthy of credit as a witness.

Defendant filed no affidavits to sustain her credibility, and the court overruled the motion for change of venue.

The statute requires the application for change of venue to be verified by affidavit, and the truth of the allegations thereof to be supported by the affidavit of some credible person. Gantt's Digest, sec. 1869.

It seems that the court below decided, upon the counter-affidavits filed, that Silvia Finch was not a credible person, and we can not undertake to say that she was." In Jackson vs State, 54 Ark. 247, the court said:

"We are of the opinion that it was within the discretion of the court to receive the oral testimony of these witnesses as to facts affecting their own credibility, and their testimony, as set forth in the bill of exceptions, is such as we think amply supports the finding of the court that they were not credible witnesses.

It follows that the court did not err in denying either of the appellant's applications for a change of venue."

In this case the witnesses upon examination stated that they "*      *      *      had not heard the question of public

sentiment or public feeling toward the defendant discussed and had no knowledge of the same except what they were told by Mr. Tarter one of defendant's counsel and that it was from the information received from him that the affidavits were made.    *    *    *" The court permitted the said witnesses to withdraw their affidavit, and thereupon held the statute had not been complied with, and we think the court acted correctly.

The fifth assignment states that persons of his own race were excluded from the grand jury because of their race and color. If the statement of fact made in this assignment was true, it would be reversible error, but nowhere does the record disclose such a state of facts, and a statement of a fact in an assignment of error, which is absolutely false, so far as the record is concerned, is not only illegitimate practice, but deserves the condemnation of this court.

The sixth assignment was the alleged error in excluding from the jury a certain question and answer, as to whether Eliza Dixon, a witness for the government, was a "coke fiend," meaning a cocaine fiend, and appellants cite Underhill on Criminal Evidence, section 168, in support of their assignment, but Mr. Underhill says:

"The habitual use of morphine may be shown, and, if proved, is a circumstance for the jury to consider in determining the mental condition of the accused." Hence it appears that the mental condition of the accused may be examined into, but not a witness; the jury are the judges of the credibility of the witnesses.

"'And it has been held inadmissible in order to attack veracity to prove the bad character of a female witness for chastity, or to show she is a prostitute (Pleasant vs State, 15

Ark. 624), or to prove habits of intemperance, which do not affect the perceptive or narrative powers." Whar. Cr. Ev. 9th Ed. 486; Thayer vs Boyle, 30 Me. 475; Hoitt vs Moulton, 21 N. H. 586. Evidence of the use of opium can not be introduced to impair credit, unless it be shown that the witness was under the influence of opium when examined, or that his powers of observation or recollection were affected by the habit. Whar. Cr. Ev. 9th Ed. 384a. Hence the court committed no error in excluding this question.

The seventh assignment was the alleged error in charging that Berger had the right to draw his gun, and if the defendant pressed upon him he would have the right to use it. In the cross examination of the witness Jones, the following testimony was given: "Q. At the time the first shot fired, who were in the car? A. Mr. Garvey, Lee Berger, myself and Duffy. Q. Berger was leaning with his left arm on the counter? A. Yes, sir, facing the south door. Q. Where was he shot? A. He was shot about an inch below the navel. Q. The defendant did no talking to Lee Berger, did he? A. No, sir, he did not. Q. Do you know whether he and Berger were good friends? A. I don't know what the relation was between them at all. * * * Q. Did you see Berger with a pistol? A. Berger had a pistol at that time, yes sir." Berger was shot by the appellant, and the court probably had in mind the fact that the testimony showed Berger had a pistol at the time. We think there was sufficient evidence to support the instruction, and consequently no error.

The eighth, ninth, tenth and eleventh assignments were charges given to the jury, and were entirely applicable to the testimony in the case, and we might add that no exceptions were saved to any of them. Appellant complains in his ninth and tenth assignments that they do not instruct that defendant had a right to act in self defense from an honest belief that he was in

danger, but no exceptions were saved, and no request made of the court to give such an instruction. We are of the opinion that these assignments were not well taken, and the authorities cited by appellant are not applicable to this case.

The twelfth, thirteen and fourteen assignments was the refusal of the court to charge on the law of manslaughter. From an examination of the evidence in the bill of exceptions, we can find no evidence whatever tending to prove the crime of manslaughter.

"It is error for the court to assume facts in an instruction not authorized by the evidence." 45 Ark. 256. "On a trial for homicide where there is no evidence whatever tending to prove a degree of the offense below that charged in the indictment, the court should refuse to instruct the jury as to such lower offense." Fagg vs State, 50 Ark. 506. We are of the opinion that the court was correct in his refusal to charge on the law of manslaughter.

The fifteenth and sixteenth assignments is the failure of the record to show that the jury was placed in charge of an officer sworn as the law directs, and a failure to show that the jury, when returned into court, were in charge of the same officer in whose custody they were placed. Sections 2265, 2266 and 2281, Mansfield's Digest, regulate and direct the manner juries shall be cared for during the recess of the court. They are as follows:

"Sec. 2265. The jurors, before the case is submitted to them, may, in the discretion of the court, be permitted to separate, or be kept together in the charge of proper officers. The officers must be sworn to keep the jury together during the adjournment of the court, and to suffer no person to speak to or communicate with them on any subject connected with the trial, nor do so themselves.

Sec. 2266. The jury, whether permitted to separate or kept in charge of officers, must be admonished by the court that it is their duty not to permit any one to speak to or communicate with them on any subject connected with the trial, and that all attempts to do so should be immediately reported by them to the court, and that they should not converse among themselves on any subject connected with the trial, or form or express any opinion thereon until the cause is finally submitted to them. This admonition must be given or referred to by the court at each adjournment.

Sec. 2281. Where the jury have agreed upon their verdict, they must be conducted into court by the officer having them in charge, their names called by the clerk, and, if they all appear, their foreman must declare their verdict."

"When the jury goes out to deliberate on its verdict, it is committed to the care of a sworn officer of the court." 1 Bishop Cr. P. & Practice, 991.

In Hurley vs The State, 29 Ark. 28, the court said: "That the jury were not sworn in accordance with law, but were illegally sworn.

The record entries show that the jurors were sworn, but the form of oath administered is not set out in the entries, nor in the bill of exceptions. In the absence of any showing to contrary, it must be presumed that the oath was administered in proper form. Greenwood vs The State, 17 Ark. 332." It does not appear from the record that any objection was made or exception saved to the officer not being sworn as the law directs, but the record does show that the jury were placed in charge of a "sworn bailiff." We are of the opinion that this is sufficient,

and that the same presumption will be indulged as to the officer as is indulged when the record shows that the jury were duly sworn. But this objection was not made at the trial, nor was it included in the grounds of the motion for new trial, and the first we hear of it is in these assignments of error.

In Atterberry vs State, 56 Ark. 520, the court said: "* * * we hold that it is too late, after verdict, to object, for the first time, that a jury retired from court in charge of an officer to whom the special oath had not been administered, where it appeared that the defendant was present when it retired, and neither asked that the special oath be administered to him nor objected to his taking charge of the jury, and it does not appear that either the officer or the jury was guilty of any misconduct." We therefore are of the opinion that the assignments are not well taken.

The seventeenth assignment is the alleged error of the court in not admonishing the jury as required by statute. No objection was made or exception saved, and we are of the opinion that the presumption is that the court did his duty, and hence there was no error.

A special brief has been handed to this court as a reply to the proposition that the court will not entertain any presumption that the officer was sworn as required by law, and it is insisted that the state must show the fact affirmatively. We have already expressed our view to the contrary, but be that as it may, it is evident under the decision in Atterberry vs State, supra, that appellant is too late to raise that question after verdict.

Being satisfied that there is no substantial error in the record, we are of the opinion that the judgment of the court below was correct, and it is therefore affirmed.

RAYMOND, C. J., and GILL, J., concur.