## W. T. CAVE v. UNITED STATES.

No. 699, Ind. T.  Opinion Filed April 10, 1909.

(100 Pac. 1118.)

1.  **INSTRUCTIONS—Harmless Defects.**  If the instructions given
    to the jury correctly state the law applicable to the case on
    trial, and are not misleading, such instructions will be held suf-
    ficient, although given in a desultory, ungrammatical, and illogi-
    cal form.

2.  **APPEAL—Objections Not Raised Below.**  This court will not on
    appeal (except in capital cases) review errors not objected to
    at the trial, nor included in the grounds of a motion for a new
    trial, in the trial court, but appearing for the first time in the
    assignments of error contained in the petition in error in this
    court, unless such errors are fundamental or jurisdictional.

    (Syllabus by the Court.)

*Error from the United States Court for the Northern District of
the Indian Territory; William R. Lawrence, Judge.*

W. T. Cave was convicted of larceny, and brings error.
Affirmed.

On October 25, 1904, the plaintiff in error, W. T. Cave, here-
inafter designated as the accused, was indicted on two counts, the
first charging the larceny of a horse, on July 18, 1904, alleged to
be the property of W. L. Lowry.  The second count charges him
with receiving and concealing the horse, knowing the same was
stolen.  On October 25, 1904, the accused was arraigned and en-
tered his plea of "not guilty."  On the issues thus joined this case
came on for trial before a jury on the 31st of October, 1905, said
trial resulting in a verdict of guilty as charged in the second
count.  In proper time the accused filed his motion for a new
trial, which was overruled and exceptions duly saved. The accused
was sentenced to a term of two years' imprisonment in the United
States penitentiary at Ft. Leavenworth, Kan.  On December 22,
1905, the accused prosecuted his appeal to the United States Court

of Appeals in the Indian Territory, where the same was pending when this state was formed. By operation of law at the commencement of statehood this case was pending in the Supreme Court of this state, from which court it was transferred to the Criminal Court of Appeals upon the creation thereof.

The motion for a new trial sets forth four grounds, as follows:

(1) "That the verdict of the jury upon said second count of the indictment was decided by lot; was a compromise verdict, arrived at under a mistaken belief as to the extent of punishment thereunder."

(2) "That the court erroneously instructed the jury as to the law applicable to said second count of the indictment, which instructions were properly excepted to by the defendant, and failed to instruct the jury upon all the essential elements and ingredients constituting the offense charged in said second count."

(3) "That the verdict is against the law applicable to said offense charged in said second count of the indictment herein."

(4) "That said verdict of the jury upon the second count of the indictment is not sustained and warranted by the evidence in this case, and is against the evidence adduced upon the trial."

*Preston S. Davis,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the United States.

BAKER, JUDGE. (after stating the facts as above). The petition in error contains 19 specifications, which are, in substance, as follows: (1) That the court erred in refusing request of defendant to exclude from the courtroom the witnesses for the government during the time that the trial jury was being impaneled. (2) In sustaining objection made by counsel for the government to questions asked by counsel for the accused of the witness Lowry, which were objected to. (3) In sustaining the objection, made by counsel for the government, to a question asked by the counsel for the accused of witness Hugh Richards. (4) In sustaining the objection made by counsel for the government to another question asked of the witness Richards. (5) In overruling objection

made by accused to the introduction of the testimony of Arthur Richards, called for the government. (6) In sustaining the objection of counsel for the government to a question asked Arthur Richards. (7) In overruling the objection of the accused to questions asked by the government of the witness Will Mason. (8) In overruling objection to questions asked Horace Rowley by the government. (9) In overruling accused's objection to questions asked W. E. Twitchel. (10) In overruling the objections of the accused to a second set of questions asked said W. E. Twitchel. (11) In overruling objections of the accused to a third set of questions asked said W. E. Twitchel. (12) In sustaining an objection made by the government to questions asked Tixie Cave by accused. (13) In instructing the jury as follows: "Gentlemen, in this case certain facts are material in order to help you in finding the defendant guilty." The fourteenth, fifteenth, sixteenth, and seventeenth assignments of error relate to instructions given to the jury. (18) In rendering judgment and pronouncing sentence upon the verdict.

Many questions are raised in the assignments of error and submitted in this court for the first time. They, not having been presented to the court below in the motion for a new trial, will therefore not be considered here. This court will not review alleged errors (except in capital cases) where the opportunity was not given to the court below to correct the errors complained of. We will therefore direct our attention only to the errors set forth in the motion for a new trial.

The first error complained of is that the verdict upon the second count of the indictment was decided by lot, and was a compromise verdict, arrived at under a mistaken belief as to the extent of punishment thereunder, and was not a fair expression of opinion of said jurors. There is nothing in the record whatever to support this contention. The verdict, having been returned in open court, imports absolute verity, as having been returned under the oath of the jurors, and each of them. The record shows no attempt whatever to impeach the verdict upon this ground, and

no argument is presented in the brief that would in any way, or to any extent, sustain the claim of the accused in this connection. If there was at any time reason for making the claim that the verdict was obtained as alleged in the motion for a new trial, it has evidently been abandoned, and therefore requires no further consideration by this court.

The second ground stated in the motion for a new trial is that the court erroneously instructed the jury as to the law applicable to the second count of the indictment, and failure to instruct the jury upon all the essential elements and ingredients constituting the offense charged in said count. The trial court in this case upon its own motion gave the jury a general charge, although the court had not given, nor had the government asked, an instruction that the possession of personal property, recently stolen, unexplained was presumptive or *prima facie* evidence of guilt. The learned counsel for the accused requested a general charge as to the presumption arising from the possession of stolen property, contending correctly that the possession must be exclusive in the accused before the presumption would arise. Thereupon the court instructed the jury as follows:

"There is a rule of law that, if property has been stolen, and soon after the stealing of the property it should be found in the possession of an individual, the fact that the property is found in his possession soon after the theft is called presumptive evidence that he is the thief. Now it is asked that the court instruct you that that possession must be exclusive. It is proper that the court must explain to you what kind of possession a person may have of property in order that this presumption may exist. Of course he must have possession. What is possession? Possession is that control over personal property which indicates that a man is the owner of it, because possession of property is the presumption that every man is the owner. To illustrate: If you should see a man using a horse, riding and driving it along the road, as far as you know the presumption is that he is the owner of it; but, if he does not have such possession, if it should be in his stable, you would have to infer that it belonged to him. But here is a man with a stable that everybody puts horses in, and he left the doors open and for public use generally, and if you should

see a horse in that stable, and these facts appear, you would not presume that it was his horse, but that it might be somebody else's horse. It depends upon the character of the possession. He would not have to have a horse by the halter and hold it all the time, but if it is in his charge, in his building, under his control, if the evdence shows that, then that is all the possession the law requires, because if a man has not got it, or the right to control it, he is not in possession, or somebody else must have possion, or nobody. That is a question for you to determine: Whether he did have possession of that property. That you must determine yourself the same as in every ordinary affair of life. If you think he had control of this property, and charge of it, and the horse was in his stable under circumstances such as it had not the right to be there—or if it was there—it is for you to. determine whether it should be there or not. That depends upon the facts and under the circumstances in this case."

After all the instructions had been given, including the instruction upon the presumption of guilt growing out of the possession of stolen property, knowing the same to have been stolen, the accused had entered the following exception:

"We desire to except to the instructions of the court to the jury that, though the evidence may not be complete and full, yet if it satisfies your mind that he received this property and concealed it, knowing it to have been stolen, then you would find him guilty on the second count of the indictment."

The record shows that the only other exception of the accused to the charge is as follows:

"Upon the charge of reasonable doubt, and also upon the matter of the alibi as a defense, because the instruction was of such a nature as to disparage, and to indicate to the jury the opinion of the court that there is a lack of proper testimony to maintain this defense."

The instruction just quoted was a part of the court's general charge, and must be read in connection with the whole charge to arrive at its correctness, or otherwise, and to determine the effect thereof upon the minds of the jury. The charge is by no means a model of perfection. On the contrary, it is desultory, disconnected, and leaps from one subject to another rather abruptly. It is couched in peculiar words and phrases, and is by no means a

beautiful disquisition of the law of the case, and will not go down in history as elegant and euphonious in diction; nevertheless the all-important question for this court to determine is: Does the charge, notwithstanding its imperfections, fairly state the law applicable to the case at bar correctly, and were the substantial legal rights of the accused thereby properly safeguarded? If so, then the requirements of the law, the interest of justice, and the rights of the accused were properly subserved. We have carefully examined all the instructions given, and we think they state the law, and the substantial rights of the accused were amply and fully protected, and no reversible error was committed by the trial court in giving the charge shown by the record to have been given.

It is true the court commenced his charge in an unhappy way, to say the least, by stating: "Gentlemen, in this case certain facts are material in order to help you in finding the defendant guilty." If the sentence just quoted stood alone, and was not immediately followed with this language: "These facts are contained in the indictment. The indictment is a mere charge in the case, made by the grand jury under their oaths, and filed with the court; and a defendant, when indicted, must be proven guilty upon that indictment—not outside of it—and only for the offense charged in the indictment, and certain things must be proved as alleged in that indictment, as I have stated to you. The indictment is not a part of the evidence in the case, but a mere charge, and should have no influence upon your minds as a matter of proof in the case. You will be entitled to take this indictment with you in the jury room. The case must stand or fall under the allegations contained in the indictment and upon the proof in support of it, beyond all reasonable doubt"—it might have been harmful. From a careful reading of the charge it will be observed that the court certainly could not have desired to convey to the jury any impressions he may have had as to the guilt of the accused, nor did he, taking the whole charge together, say anything of a nature to disparage the defense, or the rights of the accused, and to indicate to the jury that the court was of the opinion that there

was a lack of proper testimony to maintain the defense; that the court below zealously guarded the rights of the accused—is clearly reflected from the charge. Eleven times the court calls the jurors' attention expressly to the fact that they must find the accused guilty beyond a reasonable doubt. Each part of the instructions given was so connected by the language used that, upon all and each of the essential elements of the charge against the accused, the jury must be satisfied of the guilt of the accused beyond a reasonable doubt.

We fail to find in the instructions given, or from any remarks made by the trial court in the presence of the jury, that said court intended to convey any opinion or impression as to the weight of the evidence or the credibility of any witness. The court, after instructing the jury as to the purposes of the indictment, and that the allegations contained therein were a mere charge, and no part of the evidence, and that the proof must be confined to the offense set forth in the indictment, gave instructions as to the essential and material parts of the offense as averred in the indictment, and, referring to the jurisdictional matters set forth in the indictment, such as the time and place of the commission of the offense, the ownership and identity of the specific property alleged to have been stolen, the intent of the accused, etc., said: "All these things must be proved to your satisfaction beyond a reasonable doubt. This, I have pointed out to you."

The record shows also that the trial court was apparently anxious that its views as to reasonable doubt should not be misunderstood. The jury was instructed as follows:

"Every man who is indicted the law presumes innocent till he is proved guilty beyond a reasonable doubt. That is nothing but justice and fairness and common sense. If a charge is sustained against a man, you don't have to believe it until it is proven, but the next thing is to prove it, and the law says he is presumed to be innocent, clothed with innocence, all the time during the case until the close of the case and the argument—till all the evidence tending to show that he is the party charged be-

-yond a reasonable doubt. That must appear all the way through up till that time."

The accused especially complains of the instructions of the court "upon the matter of the alibi as a defense." In this connection the court instructed the jury as follows:

"Now the defendant has put in evidence tending to show, or showing, that he could not have committed this crime, and that he was not the man who sold the property, because he was not at Cherryvale, where the alleged selling occurred, on that day, and he could not have been the man who committed the offense. While he had a right to put in that defense, you have a right to consider it."

Immediately following the above quoted instruction, the court further instructs the jury as follows:

"I will say to you at first it is necessary to show in this case, in order to find the defendant guilty of having sold this property, that he is the person that was at Cherryvale at the time alleged, and if there is any reasonable doubt in your mind of his being there, you should give him the benefit of that doubt in considering that case. He claims that he wasn't there, and he has a right to make that defense that he could not have been the person seen there. You have heard all the testimony on that point, and it is for you to say whether or not you shall believe that testimony. That is what is called trying to prove or proving an alibi, one or the other."

The third ground of the motion for a new trial is "that the verdict is against the law applicable to said offense charged in said second count of the indictment." We have carefully read all the evidence in this case, and we are of the opinion that the evidence would have fully and amply sustained a verdict of guilty on the first count of the indictment, as well as on the second count. The evidence shows conclusively that the stolen horse was found in the possession of the accused, who made no effort whatever to explain such possession, but contented himself with denying the possession. Therefore the jury may have properly inferred that the accused himself stole the animal; but the absence of evidence as to how he obtained possession of the stolen horse probably induced the jury to give him the benefit of the theory that

the horse might have been brought to his livery barn (which the evidence shows was a sort of a public place) by some one else. The evidence leaves no doubt that the black pony belonging to Lowry was stolen, that the accused knew of it, and that he feloniously and surreptitiously took it to Cherryvale, Kan., and traded it for another horse, thereby concealing, or attempting to conceal, it from the owner and depriving the owner thereof.

The jury had a right to take into consideration, and doubtless did, the acts and conduct of the accused in connection with his visit to Cherryvale. The fact that he donned the garb of a brickyard laborer, and represented to Lewis, with whom he traded horses, that he was employed at a brickyard near Cherryvale, was done undoubtedly to assist the accused in disposing of the stolen horse, and to secure the benefit that might accrue to him in obtaining possession of the horse from Lewis, and hiding and concealing his own identity. The further fact that the evidence shows that the horse the accused obtained from Lewis disappeared immediately after the exchange was made, and was lost to the owner, without an explanation by the accused as to what became of the Lewis horse, certainly was a very suspicious circumstance, and pointed with unmistakable effect to his guilty knowledge of the fact that the horse he traded to Lewis was, in fact, a stolen horse, thus fastening upon him knowledge of the fact that the horse he took to Cherryvale was stolen, and the further fact that he intended to deprive the owner of the horse of the use thereof, and that he hoped to profit by the disposition of the stolen horse, if in fact he did not intend thereby to aid the thief. We, therefore, think the testimony fully sustains the verdict. The case was fully and ably presented to the jury. They saw the witnesses; heard their statements; had the means of judging of their credibility, or want of credibility; their candor, or want of candor; their fairness or intelligence, or otherwise; and their interest, if any, in the result of the action. It appearing that the verdict was fairly and impartially rendered, it must stand.

Coming now to a consideration of the various specifications

of error set forth in the petition of error which are not predicated upon any grounds alleged in the motion for a new trial. In these specifications there is alleged that the court erred in sustaining the objection of the government to questions asked by the accused of witnesses W. L. Lowry, Hugh Richards, Arthur Richards, and W. E. Twichel on cross-examination, and to the overruling of the objection of the accused to questions propounded to Horace Rowley by the government, and to the sustaining of an objection of the prosecution to questions asked witness Tixie Cave, and that the court also erred in failing to exclude from the courtroom, at the request of accused, witnesses for the government during the time that the trial jury was being impaneled. The specifications are not predicated upon any grounds set forth in the motion for a new trial, nor was the attention of the trial court called thereto, nor any opportunity given the court below to correct. The alleged errors, if any, are therefore not properly before this court. It was well settled in the Indian Territory, at the time of the trial of the case below, that the appellate court (except in capital cases) would not review objections not made at the trial, and not included in the grounds for a new trial. In *Williams v. United States,* 6 Ind. T. 1, 88 S. W. 334, the Court of Appeals of the Indian Territory, Judge Townsend speaking for the court, said:

"Objections not made at the trial, nor included in the grounds for a new trial, but first appearing in the assignment of error, will not be considered on appeal."

This doctrine is sustained in *Clay Peters v. United States,* 2 Okla. 116, 33 Pac. 1031. In an opinion written by Judge Burford, the court holds:

"Alleged errors of the trial court will not be reviewed on appeal, unless presented to the trial court for review by motion for new trial, except that the sufficiency of the charge to constitute a public offense, or the jurisdiction of the court, may be questioned for the first time in this court."

*John Dempsey v. United States,* 2 Okla. 151, 44 Pac. 382; *Stansbury v. United States,* 2 Okla. 151, 37 Pac. 1083; *Hurst v. Sawyer,* 2 Okla. 470, 37 Pac. 817; *Wamsley v. Territory of*

*Oklohoma,* 3 Okla. 279, 41 Pac. 600; *Friedman v. Weisz,* 8 Okla. 392, 58 Pac. 613; *Provins v. Lovi,* 6 Okla. 94, 50 Pac. 81; *Penny v. Fellner,* 6 Okla. 386, 50 Pac. 123.

This court concurring in the soundness of the doctrine enunciated in the cases just quoted, it will not review alleged errors of the record which have not been first presented to the trial court in a motion for a new trial unless the errors relied upon for reversal are fundamental or jurisdictional.

Having carefully considered the record in this case, we find no error disclosed, and, believing the accused has had in all respects a fair and impartial trial, the judgment of the court below is affirmed, and the sheriff of Nowata county be, by proper mandate from this court, directed to execute this sentence of the court below.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.